WISCONSIN ELECTRICAL MANUFAC-
TURING CO., INC., Plaintiff-Appellant,

v.

PENNANT PRODUCTS, INC., and Coun-
ty of Monroe Industrial Development
Agency, Defendants-Appellees.

No. 79–1948.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 15, 1980.

Decided April 23, 1980.

Timothy G. Dugan, Milwaukee, Wis., for plaintiff-appellant.

Thomas J. Arenz, Milwaukee, Wis., for defendants-appellees.

Before CUMMINGS, SPRECHER and TONE, Circuit Judges.

TONE, Circuit Judge.

The issue on this appeal is whether the district court had personal jurisdiction over the defendant under Wisconsin's long-arm statute, Wis.Stat. § 801.05(5), made applicable by virtue of Rule 4(e), Fed.R.Civ.P. The action is in contract and subject matter jurisdiction is based on diversity of citizenship. The district court held that the case was governed by our recent *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). We hold that jurisdiction exists because the defendant here, unlike the defendant in *Lakeside*, conducted activities in Wisconsin. We therefore reverse the judgment and remand the case for trial.

Plaintiff Wisconsin Electrical Manufacturing Company (WEM) is a Wisconsin corporation that manufactures computerized control systems for industry. Its only place of business is New Berlin, Wisconsin.

Defendant Pennant Products, Inc. is a New York corporation with its sole place of business in Rochester, New York. It is engaged in manufacturing and selling mixes, jams, jellies, and pie fillings for the baking industry. Its only contacts with the State of Wisconsin are those related to the contract in issue in this case. The other defendant, County of Monroe Industrial Development Agency, is an agency of the county in which Pennant's plant is located; under state law it is authorized to finance, *inter alia*, installations of equipment for industry in the county.

■ In 1977 Pennant contacted Fred D. Pfening Company of Columbus, Ohio, to discuss the production by Pfening of a computerized mixing .system.[1] Pfening then discussed with WEM the possibility of WEM's supplying a computer control system to Pfening as a component of the system Pfening would supply. In July 1977 Pfening submitted to Pennant a proposal for an entire computerized mixing system that included WEM's control system.

Pfening then suggested that, because of the complexities involved, Pennant and WEM deal directly with each other. There ensued a series of trips and telephone calls concerning Pennant's prospective purchase. Ultimately, in September 1977, Pennant placed an order for the equipment.[2] WEM accepted the order in Wisconsin by mailing an acknowledgement to Pennant but was unable to deliver on time, and the resulting dispute led to this action.[3]

■ The significant contacts of the out-of-state buyer with the forum state that are present here but absent in *Lakeside* are visits by the buyers' agents to Wisconsin in connection with the business on which the claim is based. There were two visits: In August 1977 Pennant's vice president traveled to New Berlin to inspect WEM's facilities with a view to determining whether WEM was capable of performing the contemplated contract. In January 1978 Pennant's general manager traveled to New Berlin to meet with WEM "to discuss changes in the overall control system precipitated by changes in Pennant's bakery operation." The discussion concerned "misunderstandings"[4] on that subject that were ultimately resolved in later conferences not held in Wisconsin, which were followed by the transmittal in late January by WEM to Pennant of a change order. The other communications between the parties, which were numerous, occurred outside Wisconsin or by interstate mail or telephone.

The two visits by agents of the defendant to Wisconsin are enough, in our opinion, to distinguish this case from *Lakeside*.[5] The due process principle stated in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), applied in our *Lakeside* decision, and reiterated in *World-Wide Volkswagen Corp. v. Woodson*, —— U.S. ——, ——, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), is as follows:

> [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum

1. As explained in *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189, at 1190 (7th Cir. 1980), since the district court has decided Pennant's motion solely on the basis of written materials, WEM need only show a prima facie case for personal jurisdiction and is entitled to the resolution in its favor of all disputes about relevant facts.

2. In so doing, Pennant acted as agent for the county agency, which would purchase the equipment and lease or sell it to Pennant pursuant to an agreement between those parties. That both Pennant and the county agency are real parties in interest to the contract dispute is not contested.

3. Pennant has also filed suit on this matter in the United States District Court for the Western District of New York, which has stayed its proceedings because this action was filed earlier.

4. Both quotations are from the second affidavit of WEM's president.

5. The parties do not dispute that, purely as a statutory matter, the terms of Wis.Stat. § 801.-05(5) apply and that the statute extends to the limits of due process. *See Flambeau Plastics Corp. v. King Bee Mfg. Co.*, 24 Wis.2d 459, 464, 129 N.W.2d 237, 240 (1964).

State, thus invoking the benefits and protections of its laws.

Satisfied here is the requirement that the defendant, not merely the plaintiff, conduct activities in the forum state,[6] which in a contract case must relate to the formation or performance of the contract. The visits by Pennant's agents to be the forum state, first during negotiations to determine, by inspecting WEM's facilities there, whether it would be able to perform the contract, and later, while the contract was being performed, to negotiate with WEM about performance,[7] were not merely matters of convenience, as were the visits in *Capital Dredge & Dock Corp. v. Midwest Dredging Co.*, 573 F.2d 377, 380 (6th Cir. 1978), and *Kaye-Martin v. Brooks*, 267 F.2d 394 (7th Cir.), *cert. denied*, 361 U.S. 832, 80 S.Ct. 84, 4 L.Ed.2d 75 (1959),[8] but rather were significant in the formation of the contract and Pennant's efforts to have it satisfactorily performed.[9] *See United States Railway Equipment Co. v. Port Huron & Detroit Railroad*, 495 F.2d 1127 (7th Cir. 1974); *National Gas Appliance Corp. v. AB Electrolux*, 270 F.2d 472 (7th Cir. 1959), *cert. denied*, 361 U.S. 959, 80 S.Ct. 584, 4 L.Ed.2d 542 (1960).[10]

6. For the exercise of personal jurisdiction, the defendant need not have been physically present in the state, but need only have acted indirectly within the forum state. *See Fisons, Ltd. v. United States*, 458 F.2d 1241, 1250–52 (7th Cir.), *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (1972).

7. The inspection visit is significant not as evidence that Pennant expected WEM to perform the contract in Wisconsin, which is insufficient to establish jurisdiction, *see Lakeside, supra*, 597 F.2d at 603, but as itself a purposeful act constituting the conduct of activities within Wisconsin.

8. Thus, we are not holding that "the law's requirement is satisfied by a foot-fall on the State's soil." *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.*, 239 F.2d 502, 509 (4th Cir. 1956) (Sobeloff, J.).

9. We attach little, if any, weight to the contract term specifying that shipment be F.O.B. plaintiff's plant in New Berlin, Wisconsin. *See Lakeside*, 597 F.2d at 603–04 & n.14. Likewise of little import are the interest of the forum state and convenience, two factors often considered in analysis of personal jurisdiction, *see, e. g., Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965), though sometimes given only secondary importance, *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 456 n.10 (8th Cir. 1977). Since plaintiff is a Wisconsin resident, the first factor favors the exercise of personal jurisdiction. The inconvenience to defendants of defending this suit in Wisconsin certainly does not rise to the level of a due process violation where approximately half of the probable witnesses are in Wisconsin, as are engineers' design and drafting materials relating to the nature and value of the services provided by plaintiff.

10. In *United States Railway Equipment Co.*, personal jurisdiction was held to exist where defendant made two visits to the forum state to inspect plaintiff's facilities, plaintiff's contract performance was to be in that state (though no mention is made that that was a contract requirement), forum state law was to govern the contract, payment was to occur in the forum state, and plaintiff executed the contract in forum state.

In *National Gas Appliance Corp.*, which included a breach of contract claim by a purchaser of refrigerator cooling units against the manufacturer, this court held personal jurisdiction to exist where defendant's only contacts with Illinois were two visits by defendant's representatives. The first, by defendant's chief engineer during contract negotiations, was in connection with the manufacture by a third party of the cabinets necessary to house defendant's cooling units. During this visit, the defendant's engineer discussed with plaintiff's representatives various details of the contract then being negotiated between the two companies and observed tests of sample cabinets. The second visit, by defendant's chief engineer and its United States representative at about the time that plaintiff accepted defendant's offer, included further discussions with plaintiff's representatives about the project, a visit to the third party for inspection of the cabinet, and laboratory tests of defendant's product. The court concluded that these visits were not discussions of technical engineering problems, as contended by defendant, but rather a "substantial part" of the negotiations of the contract, during which defendant was "busily engaged in satisfying plaintiff that it would be advantageous for it to use defendant's cooling units." *Id.* at 475. Thus, it concluded, personal jurisdiction could constitutionally be exercised.

*See also Liquid Carriers Corp. v. American Marine Corp.*, 375 F.2d 951 (2d Cir. 1967); *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972); *American Contract Designers, Inc. v. Cliffside, Inc.*, 458 F.Supp. 735 (S.D.N.Y.1978); *Nordberg Division of Rex Chainbelt, Inc. v. Hudson Engineering*

Ironically, the same court whose judgment was reversed in *Lakeside* dismissed this action in the reasonable belief that this case was close enough to *Lakeside* to be decided the same way. We appreciate and sympathize with the position of that court and other trial courts, state and federal, that must so frequently decide an amorphous federal constitutional question in order to determine whether service of process has been effective in an otherwise routine case. So long as long-arm jurisdiction reaches to the outermost limits due process will permit and so long as due process standards continue to be susceptible only of a case-by-case application, reasonable minds will differ in particular cases and the "degree of predictability to the legal system" desired by the Supreme Court, *World-Wide Volkswagen Corp., supra,* 100 S.Ct. at 567, will prove elusive. A strong case could be made for a set of concrete, objective standards, at least as a statutory matter, however arbitrary they might seem in individual cases, that would enable litigants to determine whether jurisdiction was present without taking the question to a reviewing court. However, applying the present standards as best we can, we think jurisdiction exists here.

REVERSED.

---

*Corp.,* 361 F.Supp. 903 (E.D.Wis.1973); *Lundell v. Massey-Ferguson Services, N.V.,* 277 F.Supp. 940 (N.D.Iowa 1967); *cf. Kropp Forge Co. v. Jawitz,* 37 Ill.App.2d 475, 186 N.E.2d 76 (1962) (where defendant visited forum state to inspect machinery to be purchased, personal jurisdiction existed either because he allegedly made contract there or because his inspection was activity in the state "in furtherance of" the contract).

In contrast, in *Tommills Brokerage Co. v. Loeb, Rhodes & Co.,* 411 F.2d 764 (7th Cir. 1969), the defendant's visit to the forum was relatively insignificant. Plaintiff loan broker alleged that it was wrongfully deprived of its percentage loan commission on a proposed loan transaction it had arranged for defendant MFC, which was planning the construction of a large nursing home in Nevada. The only contact of MFC with Illinois was one trip by MFC's president "to clarify certain loan proposals which plaintiff claimed it had obtained but which were not in hand." *Id.* at 766. The court held that it had no personal jurisdiction over MFC under the Illinois long-arm statute. *See also Stillings Transp. Corp. v. Robert Johnson Grain & Molasses Co.,* 413 F.Supp. 410 (N.D.Okla.1975).

In some cases, courts have decided that personal jurisdiction does not exist where defendant's only real contact with the forum is a visit to attempt to resolve the controversy that led to the suit at bar. *See Iowa Elec. Light & Power Co. v. Atlas Corp.,* 603 F.2d 1301, 1302 n.2 (8th Cir. 1979); *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.,* 239 F.2d 502 (4th Cir. 1956); *Conwed Corp. v. Nortene, S.A.,* 404 F.Supp. 497 (D.Minn.1975). *Cf. American Compressed Steel Corp. v. Pettibone Mulliken Corp.,* 271 F.Supp. 864, 866–67 (S.D.Ohio 1967) (for purposes of personal jurisdiction issue, no significance whatsoever attached to some visits by defendant Hammermils' representatives to forum state to try to resolve the differences that eventually led to the filing of case at bar).

Finally, some courts would probably find that personal jurisdiction did not exist on the facts of this case. *See, e. g., Beldock v. Braun, N. A.,* 465 F.Supp. 466 (S.D.N.Y.1979); *CMI Corp. v. Costello Constr. Corp.,* 454 F.Supp. 497, 504–05 (W.D.Okla.1977); *cf. also Whittaker Corp. v. United Aircraft Corp.,* 482 F.2d 1079, 1082, 1084–85 (1st Cir. 1973) (two defendants dismissed for lack of personal jurisdiction as merely passive purchasers although their representatives had made one and three visits to the forum state, respectively, for unspecified reasons in connection with their contracts).