**OGDEN ENGINEERING CORPORATION, an Indiana Corporation, Plaintiff,**

v.

**ST. LOUIS SHIP, a DIVISION OF POTT INDUSTRIES, INC., Defendant.**

**No. H 82–436.**

United States District Court, N.D. Indiana, Hammond Division.

April 13, 1983.

---

Lester F. Murphy, Murphy, McAtee, Murphy & Costanza, East Chicago, Ind., for plaintiff.

David C. Jensen, Eichhorn, Eichhorn & Link, Hammond, Ind., for defendant.

## ORDER

KANNE, District Judge.

This matter is before the court on the motion of the defendant, St. Louis Ship, a Division of Pott Industries, Inc., to dismiss plaintiff's, Ogden Engineering Corporation, complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion to dismiss filed by the defendant will be denied.

On June 15, 1982, the plaintiff, Ogden Engineering Corporation (Ogden) filed a complaint in this court alleging that St. Louis Ship, a Division of Pott Industries, Inc., (St. Louis Ship) breached a contract with Ogden by refusing to pay the full contract price. Plaintiff is an Indiana corporation whose principal place of business is in Indiana, and defendant is a division of a Missouri corporation whose principal place of business is in Missouri.

The pertinent facts, as presented by the complaint and by affidavits submitted by the parties, are for the most part, undisputed. Prior to May 10, 1978, St. Louis Ship made telephone calls to Ogden in Indiana inquiring whether Ogden would be interested in designing and manufacturing custom specialized welding equipment for St. Louis Ship. On May 10, 1978, Mr. Renshaw, president of St. Louis Ship, accompanied by a management team from St. Louis Ship, visited the Ogden Plant in Schererville, Indiana, to inspect the facilities and solicit a proposal from Ogden for the manufacture of custom specialized welding equipment.[1] On July 19, 1978, St. Louis Ship mailed a "Request for Bid" to Ogden in Indiana. Ogden completed preparation of its proposal and submitted it by mail to St. Louis Ship on November 7, 1978.

Pursuant to a phone conversation during the week of November 20, 1978, Ogden's proposal was modified in order to reflect changes desired by both parties. This was later confirmed by correspondence. On January 8, 1979, St. Louis Ship issued a purchase order to Ogden requesting that the custom specialized welding be designed and manufactured by Ogden. A contract was consummated and the total price for the equipment was $1,391,630.00.

During the course of the manufacturing of the equipment, St. Louis Ship sent requests to Ogden, both verbal and in writing, for numerous and diverse modifications as well as supplemental work. Ultimately the equipment was manufactured and delivered to St. Louis Ship.

Although over One Million Dollars has been paid by the defendant to the plaintiff, a dispute arose between the parties as St. Louis Ship asserted that the goods had been found to be defective in certain respects and therefore withheld partial payment of the purchase price. Ogden then filed this

---

1. Consistent with plaintiff's allegations, St. Louis Ship, in its memorandum in support of its motion to dismiss, at page 2, states: "[R]epresentatives of St. Louis Ship visited Ogden's plant in Schererville, Indiana, for the purpose of inspecting the facility and *soliciting* a proposal ..." (emphasis added). Also, in the affidavit of Robert G. Pavlisin [facilities manager of St. Louis Ship], he states: "The purpose of the visit was merely to inspect the plant and to *inquire* whether Ogden would be interested in submitting a proposal for the work" (emphasis added). However, in what could be characterized as inconsistent with the foregoing statements, defendant later denies that the president of St. Louis Ship requested Ogden to prepare a proposal during the May 10, 1978, Indiana visit. (Defendant's answer to question 4 of plaintiff's interrogatories.)

Plaintiff need only show a *prima facie* case for personal jurisdiction. *O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir.1971). In addition, the plaintiff is entitled not only to the acceptance of all undenied factual assertions in his submission, but also to the resolution in his favor of all disputes about the relevant facts. *United States Railway Equipment Co. v. Port Huron & Detroit Railroad,* 495 F.2d 1127, 1128 (7th Cir.1974); *O'Hare International Bank v. Hampton, supra,* 437 F.2d at 1176; *Neiman v. Rudolf Wolff & Co., Ltd.,* 619 F.2d 1189, 1190 (7th Cir.1980).

action to recover the unpaid balance under the contract. St. Louis Ship filed a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2).

The court must determine whether the facts and circumstances involved in the contractual dealings between the parties were sufficient to subject the defendant to jurisdiction of this court pursuant to Indiana's long-arm statute, Ind.Rules of Procedure, Trial Rule 4.4(A), applicable by virtue of Rule 4(e) and 4(d)(7), Fed.R.Civ.P.

The court begins the analysis by noting the dissenting opinion of Justice White when the United States Supreme Court denied writ of certiorari in *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980):

> As the Court of Appeals noted, 597 F.2d at 601, the question of personal jurisdiction over a nonresident corporate defendant based on contractual dealings with a resident plaintiff has deeply divided the federal and state courts. [Citations of conflicting decisions omitted.] The question at issue is one of considerable importance to contractual dealings between purchasers and sellers located in different states. The disarray among federal and state courts noted above may well have a disruptive effect on commercial relations in which certainty of result is a prime objective. That disarray also strongly suggests that prior decisions of this court offer no clear guidance on the question.

445 U.S. at 909–11, 100 S.Ct. at 1089. (White, J., with whom Powell, J., joins, dissenting).

Justice White reiterated his concern for the lack of clear judicial guidelines on this important issue when the United States Supreme Court denied writ for certiorari in *Chelsea House Publishers, Etc., et al v. Nicholstone Book Bindery, Inc.,* 621 S.W.2d 560 (Tenn.1980), *cert. denied,* 455 U.S. 994, 102 S.Ct. 1623, 1629, 71 L.Ed.2d 856 (1982):

> As I stated in dissenting from the denial of writ for certiorari in *Lakeside Bridge & Steel Co. v. Mountain State Construc-*

> *tion Co.,* [citation omitted], 'the question of personal jurisdiction over nonresident corporate defendant based on contractual dealings with a resident plaintiff has deeply divided the federal and state courts.' *Id.* at 909, 101 S.Ct. at 1089. *Lakeside* cited 22 cases in which lower courts had split 14–8 on the question and stressed 'the considerable importance [of the issue] to contractual dealings between purchasers and sellers located in different states.' *Id.* at 910–911, 100 S.Ct. at 1089. This case presents the same issues as *Lakeside,* and the disarray among federal and state courts noted in *Lakeside* has continued. Compare *Taubler v. Giraud,* 655 F.2d 991 (9th Cir.1981), with *Nu-Way Systems of Indianapolis, Inc. v. Belmont Marketing, Inc.,* 635 F.2d 617 (7th Cir. 1980). For the reasons stated in *Lakeside,* I would grant the petition and set the case for oral argument.

455 U.S. 994, 102 S.Ct. at 1629. (White, J., with whom the Chief Justice and Powell, J., join, dissenting.)

In the analysis, the court will primarily be guided by the pertinent decisions of the Seventh Circuit and Indiana courts. Because of the differing results from several other courts, this court sees little benefit in extending the discussion to include other decisions that may be inconsistent with the guidelines set by the Seventh Circuit and Indiana courts.

The constitutional guidelines for assertion of personal jurisdiction over nonresident defendants were espoused in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), in which the Supreme Court held that in order to subject an out-of-state defendant to the personal jurisdiction of a court, the defendant must have such "minimum contacts" with the forum state that the maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158, quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283

(1958), the Court elaborated on the *International Shoe* due process test, stating:

> [I]t is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

*Id.* at 253, 78 S.Ct. at 1240. *See also World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Lakeside, supra.*

Pursuant to Rule 4(e) and 4(d)(7) of the Fed.R.Civ.P., a state long-arm statute may be invoked by a federal court sitting in that jurisdiction. *Oddi v. Mariner-Denver, Inc.,* 461 F.Supp. 306 (S.D.Ind.1978). The Indiana long-arm statute, T.R. 4.4(A), is intended to extend personal jurisdiction of the courts of the state, including federal courts, to the limits permitted under the Due Process Clause of the Fourteenth Amendment. *Valdez v. Ford, Bacon and Davis, Texas, Inc.,* 62 F.R.D. 7 (N.D.Ind.1974), *Nu-Way Systems, Etc. v. Belmont Marketing, Inc.,* 635 F.2d 617, 619 (7th Cir.1980) [interpreting Indiana law]. Accordingly, the assertion of personal jurisdiction over St. Louis Ship must rest on the Indiana's long-arm statute, T.R. 4.4(A)(1).[2]

In a pair of related cases, the Seventh Circuit determined what acts were sufficient to satisfy the due process "minimum contacts" test for asserting personal jurisdiction over nonresident defendant based on contractual dealings with a resident plaintiff. In *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.,* 597 F.2d 596 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), the Seventh Circuit held that Wisconsin lacked personal jurisdiction over the defendant and reversed the judgment entered in favor of the plaintiff by the district court.

The Court stated that:

Plaintiff, Lakeside Bridge & Steel Company [Lakeside], is a Wisconsin corporation with its principal place of business in Milwaukee. Defendant, Mountain State Construction Company [Mountain State], is a West Virginia corporation with its principal place of business in Charleston in that state. Mountain State has no place of business, property, bank deposits, telephone, or telephone listing in Wisconsin and has never sent any officer, agent, or employee to that state; nor has it had any other kind of contact with Wisconsin except for the events that give rise to this action.

The contacts between the parties all occurred outside Wisconsin or by interstate mail or telephone. The contract in question called for Lakeside to furnish structural assemblies to Mountain State for use in constructing the outlet works for the Gathright Dam and Reservoir in Virginia. While Mountain State was preparing to bid on that project, it was visited in its offices in West Virginia by Lakeside's agents, who solicited the subcontract for the structural assemblies and left a proposal. After Mountain State had been awarded the contract for the construction of the outlet works, it accepted the proposal by preparing and mailing a purchase order addressed to Lakeside in Milwaukee.... Between the initial visit by Lakeside's agents and the return of the purchase order, and presumably afterwards, there were telephone conversations between Lakeside in Wisconsin and Mountain State in West Virginia, some placed by Mountain State, and there was correspondence between the parties, some mailed by Mountain State.... Nothing was said otherwise about where the goods were to be manufactured.

Lakeside proceeded to manufacture the goods at its plant in Wisconsin and ship

---

**2.** Ind.Rules of Procedure, Trial Rule 4.4(A) provides:

(A) *Acts serving as a basis for jurisdiction.* Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state; ....

them to a siding near the project site in Virginia, where they were received by Mountain State and incorporated into the construction project. Subsequently Mountain State, asserting that the goods had been found to be defective in certain respects, withheld payment of part of the purchase price.

597 F.2d at 597–98.

The Seventh Circuit discussed that the principal contact relied upon here as a basis for jurisdiction was the performance of contractual obligations by the plaintiff, not the defendant, in the forum state. It was held that the actions by the defendant Mountain State were insufficient to confer jurisdiction upon the federal court in Wisconsin. The court stated:

> Use of interstate telephone and mail service to communicate with a Wisconsin plaintiff, if constituting contacts supporting jurisdiction, would give jurisdiction to any state into which communications were directed.

597 F.2d at 604.

The court concluded that the unilateral contacts of the defendant with the forum state could not satisfy the due process requirements as enumerated by the Supreme Court.

Approximately one year after handing down the *Lakeside* decision, the Seventh Circuit issued an opinion in *Wisconsin Electric Manufacturing Co., Inc. v. Pennant Products, Inc.,* 619 F.2d 676 (7th Cir.1980). In this decision the Seventh Circuit held that jurisdiction indeed existed because the defendant here, unlike the defendant in *Lakeside,* conducted activities in Wisconsin.

The plaintiff Wisconsin Electric Manufacturing Company (WEM) was a Wisconsin corporation that manufactured computerized control systems for industry. The defendant, Pennant Products, Inc., (Pennant Products), was a New York corporation engaged in manufacturing and selling mixes, jams, jellies, and pie fillings for the baking industry. Its only contacts with the State of Wisconsin were those related to the contract in issue in this case.

The Seventh Circuit stated that:

In 1977 Pennant contacted Fred D. Pfening Company of Columbus, Ohio, to discuss the production by Pfening of a computerized mixing system. Pfening then discussed with WEM the possibility of WEM's supplying a computer control system to Pfening as a component of a system Pfening would supply. In July 1977 Pfening submitted to Pennant a proposal for an entire computerized mixing system that included WEM's control system.

Pfening then suggested that, because of the complexities involved, Pennant and WEM deal directly with each other. There ensued a series of trips and telephone calls concerning Pennant's prospective purchase. Ultimately, in September 1977, Pennant placed an order for the equipment. WEM accepted the order in Wisconsin by mailing an acknowledgement to Pennant but was unable to deliver on time, and the resulting dispute led to this action.

The significant contacts of the out-of-state buyer with the forum state that are present here but absent in *Lakeside* are visits by the buyers' agents to Wisconsin in connection with the business on which the claim is based. There were two visits: In August 1977 Pennant's vice president travelled to New Berlin [Wisconsin] *to inspect WEM's facilities with a view to determine whether WEM was capable of performing the contemplated contract* [emphasis added]. In January 1978 Pennant's general manager travelled to New Berlin to meet with WEM 'to discuss changes in the overall control system precipitated by changes in Pennant's bakery operation.' . . . The other communications between the parties, which were numerous, occurred outside Wisconsin or by interstate mail or telephone.

The two visits by agents of the defendant to Wisconsin are enough, in our opinion, to distinguish this case from *Lakeside.*

619 F.2d at 677.

The Seventh Circuit found that the visits by the defendant to the plaintiff's facilities in the forum state were significant to the

formation and performance of the contract. The Seventh Circuit stated:

> The *visits* by Pennant's agents to be [sic] the forum state, *first during negotiations to determine, by inspecting WEM's facilities there, whether it would be able to perform the contract,* and later, while the contract was being performed, to negotiate with WEM about the performance, were not merely matters of convenience ... [citations omitted], but rather were significant in the formation of the contract and Pennant's efforts to have it satisfactorily performed [emphasis added]. 619 F.2d at 678. *See United States Railway Equipment Company v. Port Huron & Detroit Railroad,* 495 F.2d 1127 (7th Cir.1974); *National Gas Appliance Corp. v. AB Electrolux,* 270 F.2d 472 (7th Cir.1959), *cert. denied,* 361 U.S. 959, 80 S.Ct. 584, 4 L.Ed.2d 542 (1960).

In determining whether assertion of personal jurisdiction over the defendant is proper, the court must determine whether the facts in this case are closer to the facts in *Lakeside* or *Pennant Products.* First, the court must determine whether the visit by the defendant's president and management team to Indiana on May 10, 1978, was a significant and purposeful act by the defendants in the forum state. The initial visit by the defendants in *Pennant Products* was stated as follows:

> In August 1977 Pennant's vice president travelled to New Berlin [Wisconsin] to inspect WEM's facilities with a view to determining whether WEM was capable of performing the contemplated contract. 619 F.2d at 677.

The Seventh Circuit found this visit to the plaintiff's facilities to be one of two significant contacts with the forum state that distinguished *Pennant Products* from *Lakeside.* The court, in *Pennant Products,* stated:

> The inspection visit is significant not as evidence that Pennant expected WEM to perform the contract in Wisconsin, which is insignificant to establish jurisdiction, *see Lakeside, supra,* 597 F.2d at 603, but as itself a purposeful act constituting the conduct of the activities within Wisconsin. 619 F.2d at 678 n. 7.

In both *Pennant Products* and the case at bar, the defendant's personnel visited the plaintiff's facilities in the forum state prior to the formation of the contract. This court finds that the visit by defendant's president and its management team to Indiana is *identical* in scope to the initial visit in *Pennant Products.* For the reasons stated by the court in *Pennant Products,* this court concludes that St. Louis Ship's visit to Ogden facilities is a significant and purposeful act by the defendant in the forum state.

At this point in the analysis, the court finds one significant contact with the forum state and as such, places this case squarely between *Lakeside* and *Pennant Products.*[3] The pivotal question is whether there are any other purposeful acts by the defendant which would cause this case to align with *Pennant Products* in order to establish personal jurisdiction.

Parties to a contract may effectively agree as to the state whose substantive law shall govern the validity, construction, interpretation, and effect of a contract.[4]

---

**3.** The only single visit case decided by the Seventh Circuit cited to the court was *Tommills Brokerage Co. v. Loeb, Rhoades & Co.,* 411 F.2d 764 (7th Cir.1969). In *Tommills,* a defendant visited the forum state to clarify certain loan proposals. The court held that in spite of the visit there were no substantial contacts with the forum state and declined to assert personal jurisdiction over the defendants.

The *Tommills* case is not persuasive in light of the reasoning set forth over ten years later in the *Pennant Products* case in which the court held that the initial inspection visit by the defendant to the plaintiff's facility in the forum state was in fact a significant contact.

**4.** 16 Am.Jur.2d, Conflict of Laws § 78, p. 123, citing *Aluminum Co. of America v. Hully,* 200 F.2d 257, (8th Cir.1952); *United States v. Biloxi Municipal School Dist.,* 219 F.Supp. 691 (S.D. Miss.1963), aff'd 326 F.2d 237 (5th Cir.1964), *cert. den.,* 379 U.S. 929, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964).

When such intention is expressly incorporated into that agreement, then it has generally been held that the parties' intention is to be given effect.[5] However, such agreement may be held invalid if contrary to public policy, or in violation of a statute.[6] The parties' power to choose the governing law is frequently delimited by the further qualification that the contract be properly referable to the state selected, or that such state have a direct, real, substantial, or significant, or at least reasonable relationship [7] to, or connection with, the transaction or subject matter of the contract.[8]

In the complaint, Count I, paragraph 4, the plaintiff alleges: "That on November 7, 1978, Ogden completed preparation of its proposal in Indiana and submitted such proposal to St. Louis Ship, which is attached hereto as group Exhibit A."

Within said exhibit and attached to the proposal are the terms and conditions of the proposal. Specifically, paragraph number 11 of the proposal states:

Miscellaneous:

(a) These terms and conditions contain the complete and final agreement between Ogden and the purchaser. No other agreement or document shall affect the terms and conditions herein unless specifically provided to the contrary, and no other agreement in anyway modifying these terms and conditions will be binding upon Ogden unless made in writing and signed by Ogden's authorized representative.

(b) *Indiana law shall govern the making, interpretation, construction and performance hereof* [emphasis added].

Of such provisions as agreed to between the plaintiff and defendant it has been stated that:

[T]he parties' stipulation as to the law governing their contract is but one factor, albeit a *weighty one,* in deciding the—ultimate question—namely, which jurisdiction has the most significant contacts with the matter at issue [emphasis added].[9]

The Seventh Circuit has stated that the fact that the forum state law is to govern a contract is often viewed as a factor favoring jurisdiction. In *O'Hare International Bank v. Hampton,* 437 F.2d 1173 (7th Cir. 1971), an Illinois plaintiff entered into a lease agreement and guaranty with out-of-state defendants. The guaranty in question specifically provided that it shall be construed according to the law of the State of Illinois, in which state it shall be performed. The court stated:

The defendant certainly must have contemplated the effects in Illinois of a failure to make a monthly rental payment.... *Furthermore, the fact that the guaranty was to be construed according to Illinois law and performed in that state clearly demonstrates that the defendants 'invoked the benefits and protections' of the state* [emphasis added].

437 F.2d at 1177. *See also United States Ry. Equip. Co. v. Port Huron & Detroit R. Co.,* 495 F.2d 1127, 1129–30 (7th Cir.1974).

Recently, the Seventh Circuit has, in passing, reiterated the fact that forum substantive law can be viewed as a factor favoring jurisdiction. *Neiman v. Rudolf*

5. *Overseas Trading Co., S. A. v. United States,* 159 F.Supp. 382 (Ct.Cl.1958); *Boase v. Lee Rubber & Tire Corp.,* 437 F.2d 527 (3rd Cir. 1970); ovrld on other grounds *Melville v. American Home Assur. Co.,* 584 F.2d 1306 (3rd Cir.1978).

6. 16 Am.Jur.2d, Conflict of Laws § 78, pp. 124–5 (citations omitted).

7. Ind.Code 26–1–1–105 provides:
  (1) Except as provided hereafter in this section when a transaction bears a *reasonable relation* to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this Act applies to transactions bearing an appropriate relation to this state [emphasis added].

8. See 16 Am.Jur.2d, Conflict of Laws § 78, pp. 125–126, citing *National Union Fire Ins. v. D & L Constr. Co.,* 353 F.2d 169 (8th Cir.1965), *cert. denied,* 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 539; *Consolidated Jewelers, Inc. v. Standard Financial Corp.,* 325 F.2d 31 (6th Cir.1963).

9. 16 Am.Jur.2d, Conflict of Laws § 78, p. 128 (citations omitted).

*Wolff & Co. Ltd.,* 619 F.2d 1189, 1195, n. 8 (7th Cir.1980)[10]; *Jadair, Inc. v. Walt Keeler Co., Inc.,* 679 F.2d 131, 134, n. 8 (7th Cir. 1982)[11].

The fact that the contract was to be construed according to Indiana law demonstrates that the defendants "invoked the benefits and protection" of the state of Indiana. The court finds that the defendant's agreement during the negotiations to the provision in the proposal relating to the governing of Indiana's substantive law on the making, interpretation, construction and performance of the contract is significant to the question of personal jurisdiction.

This additional factor is, in this court's view, sufficient to tip the due process scales in favor of exercising jurisdiction over the defendant. This case, on balance is closer to *Pennant Products* than *Lakeside.* In light of the totality of the circumstances, the single visit by St. Louis Ship supported by the parties' agreement that Indiana law would govern "the making, interpretation, construction and performance" of the contract is sufficient to satisfy the due process "minimum contacts" test for asserting jurisdiction over St. Louis Ship.

IT IS THEREFORE ORDERED that the defendant's motion to dismiss for lack of jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2) be and hereby is DENIED.

Having made the foregoing findings and order the court would further state that defendant's position is well reasoned and well briefed, and it is obvious to the court that this is an extremely close question. Therefore, pursuant to 28 U.S.C. § 1292(b), this court states that it is of the opinion that the foregoing order denying defendant's motion to dismiss involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

NOTE: Motion for permission to appeal the district court's interlocutory order was denied by the 7th Circuit Court of Appeals on June 20, 1983, pursuant to 28 U.S.C. § 1292(b).

---

**10.** The court stated: "[T]he fact that forum state law is to govern a contract is often viewed as a factor favoring personal jurisdiction ...."

**11.** The court stated: "In some circumstances an explicit choice-of-law provision in the contract might be relevant to the defendant's reasonable expectation of suit in the forum whose law is chosen."