**MID–STATES MORTGAGE CORP., Plaintiff,**

v.

**Harry A. LOUIE, John E. Brittain, III, and Eugene W. Camara, Defendants.**

No. 93–C–0144.

United States District Court, E.D. Wisconsin.

Dec. 6, 1993.

Steven L. Strye, O'Neil, Cannon & Hollman, Kathryn A. Keppel, D. Michael Guerin, Denis J. Regan, Gimbel, Reilly, Guerin & Brown, Milwaukee, WI, for plaintiff.

William H. Levit, Jr., Mark J. Backe, Godfrey & Kahn, Milwaukee, WI, for defendants.

**DECISION AND ORDER**

RANDA, District Judge.

Before the Court is a Recommendation from the Honorable Magistrate Judge Robert L. Bittner regarding the Defendants' motion to dismiss the above captioned case for lack of personal jurisdiction. The Magistrate recommended dismissal of the action as the exercise of jurisdiction would not comport with the due process clause of the Fourteenth Amendment. The Magistrate undertook the two part analysis set forth in *Daniel J. Hartwig Associates, Inc. v. Kanner*, 913 F.2d 1213 (7th Cir.1990) and concluded that Wisconsin's long-arm statute applied. Nevertheless, the Magistrate determined that the exercise of personal jurisdiction pursuant thereto violated the due process clause of the Fourteenth Amendment. Pursuant to 28 U.S.C. § 636(b) and Local Rule 13.03 (E.D.Wis.), both parties have filed objections thereto. Pursuant to those same provisions, the Court reviews de novo the Magistrate's Recommendation. For the reasons set forth therein and briefly addressed below, the Court adopts the Magistrate's Recommendation of October 29, 1993.

**ANALYSIS** [1]

The arguments raised by both parties were adequately and correctly addressed by the Magistrate's Recommendation. Simply put, the Magistrate's jurisdictional analysis properly rested upon the single transaction which gave rise to the matter in dispute. Not surprisingly, the Defendants do not object to the Magistrate's recommendation, but only to the conclusion that Wisconsin's long-arm statute (Wis.Stats. § 801.05(5)(d)) is applicable. In arguing that § 801.05(5)(d) is inapplicable, the Defendants point this Court's attention to two cases which the Magistrate correctly and convincingly distinguished. *A.L. Afram v. Balfour, MacLaine, Inc.*, 63 Wis.2d 702, 218 N.W.2d 288 (1974); *Nagel v. Crain Cutter Co.*, 50 Wis.2d 638, 184 N.W.2d 876 (1971) (Recommendation at 7–8) The Court incorporates the Magistrate's reasoning and analysis relative thereto and finds

---

1. The factual background of this matter is sufficiently set forth in the Recommendation. Accordingly, the Court will not duplicate that effort herein.

that the exercise of personal jurisdiction is warranted pursuant to Wis.Stat. § 801.-05(5)(d).

The Plaintiff's objection focuses on the actions taken by the individual defendants (specifically, Brittain and Louie) in their management of Phoenix Funding Group, Inc. ("Phoenix"). Plaintiff argues that the day-to-day fax and telephone management activities of, at least, two of the defendants, comport with the due process clause. This argument ignores the distinction between individuals acting in their corporate as opposed to their individual capacities. The oft stated rule is that jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation. *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974); 4 Wright & Miller, *Federal Practice and Procedure*, § 1069 (1987). Having no basis to conclude that the corporate form should be ignored, the Magistrate concluded that the "telephone, mail, and fax contacts with Wisconsin **related to the business operations of Phoenix and not to the contract between the parties at issue in this case**". (emphasis added) (Recommendation at 11) Accordingly, the Magistrate narrowed the personal jurisdiction analysis to the transaction at issue; the one and only contact these *individual* Defendants had with Wisconsin.

While satisfied that this contact fell within § 801.05(5)(d) thereby providing a statutory basis for the exercise of jurisdiction, the Magistrate concluded that the exercise of jurisdiction over these Defendants would not comport with "traditional notions of fair play and substantial justice". *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Of the three Defendants, only Camara has ever been in Wisconsin and that was in 1978 for less than fifteen (15) minutes. (Recommendation at 6) This Court, upon review of the complete file, concludes that dismissal of the above captioned case against the Defendants is warranted for the reasons set forth in the Magistrate's Recommendation.[2]

2. The Magistrate was also correct not to entertain the Plaintiff's motion to amend its Complaint adding Phoenix as a defendant. The addition of Phoenix, a Wisconsin corporation, (thereby destroying complete diversity) would not be permitted unless otherwise provided for in Fed.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. The Defendants' motion to dismiss the above captioned Case No. 93–C–0144 is **GRANTED;**

2. The Plaintiff's motion to amend its Complaint is **DENIED AS MOOT;** and

3. Final Judgment shall be entered on a separate document.

**SO ORDERED.**

### MAGISTRATE JUDGE'S RECOMMENDATION RE: DEFENDANTS' MOTION TO DISMISS

BITTNER, United States Magistrate Judge.

### MEMORANDUM

The plaintiff, Mid–States Corporation (hereinafter referred to as Mid–States), commenced this action on January 11, 1993 in the State of Wisconsin, Milwaukee County Circuit Court, against defendants Harry A. Louie; John E. Brittain, III; and Eugene W. Camara, alleging the defendants breached their contract to pay $200,016.00 plus interest for the purchase of Phoenix Funding Group, Inc. (hereinafter referred to as Phoenix) stock. On February 12, 1993 the defendants removed the action to federal district court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Thereafter, the defendants filed a motion to dismiss for lack of jurisdiction and the plaintiff, in turn, filed a motion for leave to amend its complaint. Subsequently, in anticipation of a motion by the defendants to disqualify plaintiff's counsel, this Court entered an order on April 2, 1993 staying further briefing of the defendants' motion to dismiss for lack of personal jurisdiction and the plaintiff's motion for leave to amend until further order of the Court.

R.Civ.P. 19. The Magistrate declined to proceed with a Rule 19 analysis as dismissal of all Defendants precludes consideration of the motion. This Court agrees. Accordingly, Plaintiff's motion to amend its complaint is denied as moot.

On April 30, 1993 the defendants' motion for disqualification of plaintiff's counsel was granted by this Court. Pursuant to a briefing schedule set into place following the decision on the disqualification issue, the briefing of the defendants' motion to dismiss and the plaintiff's motion to amend has been completed and such motions are ready for resolution. They will be addressed herein.

This action was assigned to this Court according to the random assignment of civil cases, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 13.03 (E.D.Wis.). Since the parties have not consented to United States Magistrate Judge jurisdiction, this Court now makes its recommendation for the proposed disposition of the defendants' motion to dismiss and declines to rule on the plaintiff's motion to amend its complaint. Subject matter jurisdiction is obtained in this action pursuant to 28 U.S.C. § 1332(a). Venue is proper in this District under 28 U.S.C. § 1391(a).

### DEFENDANTS' MOTION TO DISMISS

The defendants move the Court for issuance of an order, pursuant to Fed.R.Civ.P. 12(b)(2), dismissing this action on the ground the Court lacks personal jurisdiction.

In order to determine the scope of this Court's personal jurisdiction in a diversity case, this Court must examine State law governing personal jurisdiction. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir. 1990); Fed.R.Civ.P. 4(e). The plaintiff has the burden of establishing jurisdiction under the Wisconsin long-arm statute, but the provisions of the Act are to be liberally construed in favor of exercising *in personam* jurisdiction. *State ex rel. N.R.Z. v. G.L.C.*, 152 Wis.2d 97, 447 N.W.2d 533, 535 (1989); *Lincoln v. Seawright*, 104 Wis.2d 4, 9, 310 N.W.2d 596, 598 (1981). The statute represents an attempt to codify the due process requirements of "minimum contacts" set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Consequently, a plaintiff's showing of compliance with Wis.Stat. § 801.05 raises a presumption of compliance with due process; a presumption the defendant is permitted to rebut. *State ex rel. N.R.Z. v. G.L.C.*,

447 N.W.2d at 535; *Lincoln v. Seawright*, 310 N.W.2d at 599. The determination of whether a Wisconsin court has jurisdiction over a nonconsenting, nonresident defendant is a two (2) step process. *Daniel J. Hartwig Associates, Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir.1990). The first step is to determine whether the defendant is subject to jurisdiction under the applicable Wisconsin state long-arm statute. If not, then there is no jurisdiction and the inquiry is at an end. If so, then the court must go to the second step to determine whether the exercise of jurisdiction under the long-arm statute violates the due process requirements of the Fourteenth Amendment. *Daniel J. Hartwig Associates, Inc. v. Kanner*, 913 F.2d at 1216; *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 665 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987) (citing *Matter of All–Star Ins. Corp.*, 110 Wis.2d 72, 76, 327 N.W.2d 648, 650 [Wis.Ct.App.1983]). A District Court sitting in diversity must not only ask these same two (2) questions, but it should ask them in the same order since it is obviously preferable to decide a question on statutory rather than constitutional grounds. *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d at 665. In ruling on a motion to dismiss for lack of personal jurisdiction, courts are not limited to the facts set forth in the complaint, but rather may receive and consider affidavits from both parties. *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir.1983), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984); *see also, Met–L–Wood Corp. v. SWS Indus., Inc.*, 594 F.Supp. 706, 708 n. 5 (N.D.Ill.1984). When deciding such a motion solely on the basis of the parties' written materials, the plaintiff need only show a *prima facie* case of personal jurisdiction and is entitled to have all inferences about material jurisdictional facts resolved in its favor. *Wisconsin Elec. Mfg. Co., Inc. v. Pennant Prods.*, 619 F.2d 676, 677 (7th Cir. 1980).

### Relevant Facts

Phoenix is a Wisconsin corporation incorporated with the Wisconsin Secretary of State on April 13, 1989. The initial owners were Mid–States and Evan Daniels, with

Mid–States owning approximately fifty (50) percent of the stock. By 1989 seventy-five (75) percent of outstanding stock in Phoenix was owned by Daniels and Guaranty Securities Corp., a corporation owned and controlled by Daniels, Louie, and Brittain. Prior to June 1991 Brittain was elected secretary and treasurer of Phoenix and Brittain, Louie, Daniels, and Camara were elected to its board of directors. From 1989 to 1991 all Phoenix board of directors meetings were conducted in California. From its inception, Phoenix operated out of Wisconsin, which provided a central location and a relatively low overhead for the national company, which was operating in the midwest and on both coasts. Its initial principal place of business was at Mid–States offices in Elm Grove, Wisconsin until July 1990 when the office was relocated to the nearby community of Brookfield, Wisconsin.

Beginning in 1989 Louie and Brittain were directly involved in the operation and management of Phoenix without traveling to Wisconsin. On an almost daily basis, they had prolonged telephone conversations relating to the management of Phoenix with Mike Dickert, who was the president of Phoenix from 1989 through August 1991, and other Phoenix personnel. They also had "regular" fax and mail contact.

In late 1990 and January 1991 Mid–States negotiated the sale of twenty-five (25) percent of its stock ownership in Phoenix for $350,000.00 with Brittain, Louie, and Camara. The agreement was drafted in Wisconsin and was signed by Louie, Brittain, and Camara in California. Although the agreement references $200,000.00 of the purchase price as being paid to Richard J. Jungen and Daniel Burkwald, Mid–States' shareholders, pursuant to a consulting agreement, neither they nor Mid–States performed any services under the agreement and the parties signed a written acknowledgment that the agreement related to the purchase of stock (Exhibit C to Jungen affidavit). Pursuant to the agreement, Brittain, Louie, and Camara paid a total of $150,000.00 into an escrow account in California, which was paid to Mid–States. In turn, Mid–States caused the California escrow company to deliver twenty-five (25)

percent of the shares of Phoenix stock to Brittain, Louie, and Camara. No further payments under the agreement were made by defendant Brittain, Louie, and Camara because they contended the Phoenix Funding Program was a failure and had been cancelled. Subsequent to the dispute under the agreement, Brittain, Louie, Camara, and Daniels fired Dickert as president of Phoenix and moved the corporate offices to California.

Brittain, Louie, and Camara are residents of California who have not done any business in Wisconsin in their personal capacities and neither own nor rent any real property in Wisconsin. Brittain and Louie have never been physically present in the State of Wisconsin and defendant Camara has not been physically present within the State since 1978, when he was near LaCrosse, Wisconsin for less than fifteen (15) minutes.

### Wisconsin Long–Arm Statute

Plaintiff Mid–States bears the burden of establishing the nonresident defendants are subject to suit in this State under the long-arm statute. *State ex rel. N.R.Z. v. G.L.C.*, 447 N.W.2d at 535. Mid–States asserts the three (3) defendants are subject to the personal jurisdiction of this Court under the following subsections of the Wisconsin long-arm statute: § 801.05(1)(d); §§ 801.05(5)(b), (c), (d), and (e); and §§ 801.05(6)(b) and (c). This Court agrees with Mid–States that the facts of this case fall within the scope of § 801.05(5)(d).

Wis.Stat. § 801.05(5)(d) allows a court to exercise jurisdiction in an action relating to:

[G]oods, documents of title, or *other things of value shipped from this state by the plaintiff to the defendant* on the defendant's order or direction.

This Court's reading of the plain words of this subsection cause it to conclude the foregoing section affords it personal jurisdiction over the defendants, because Mid–States delivered stock certificates to the defendants. The stock certificates constitute "documents of title or other things of value" which were shipped to the defendants from Wisconsin at their order or direction. The fact a California escrow company was utilized as a conduit to effect the delivery of the stock certificates

does not alter this Court's conclusion. In contending the facts of this case are not within the scope of § 801.05(5)(d), the defendants' rely upon "Revision Notes" to the subsection which indicate it addresses "[a]ctions arising out of defects and goods actually received in or shipped from the state by either party." G.W. Foster, Jr., Annotation "Revision Notes—1959" Wis.Stat.Ann. § 801.05 at 70 (West 1977). However, this Court does not deem the legislative history controlling where the facts of this case fall within the plain language of the statute. *See Empire General Life Ins. Co. v. Silverman,* 135 Wis.2d 143, 399 N.W.2d 910, 913 (1987) (in determining legislative intent, if the meaning of statute is clear from the language of the statute itself, the court is precluded from referring to extrinsic sources to aid in interpretation).

Furthermore, the cases relied upon by the defendants are distinguishable from the facts of this case. In *Afram v. Balfour, Maclaine, Inc.,* 63 Wis.2d 702, 218 N.W.2d 288, 293–94 (1974), the court held the Wis.Stat. § 801.-05(5)(d) did not provide for jurisdiction over a New York commodities broker who accepted a telephone order to sell silver from a Wisconsin resident who held an account with a London broker. As acknowledged by the defendants, the holding was based principally on the fact the thing which was delivered was by the London broker, who was not a party to the litigation. *See Afram v. Balfour, Maclaine, Inc.,* 218 N.W.2d at 293. Moreover, this lawsuit does not involve a "confirmation form" which the court speculated, without deciding, might not be a "thing of value." Rather, it involves stock certificates which indisputably are things of value. *Nagel v. Crain Cutter Co.,* 50 Wis.2d 638, 184 N.W.2d 876, 879 (1971) is also distinguishable, since the court held the royalty payments at issue in that case were "money", which did not constitute "other things" of value within the purview of the statute. Unlike royalties, stock certificates do not represent "money." Since this Court concludes it has jurisdiction over the defendants, pursuant to Wis.Stat. § 801.05(5)(d), it will not address the alternative statutory basis for personal jurisdiction relied upon by Mid–States.

The second prong of this Court's inquiry is whether the exercise of jurisdiction under the long-arm statute is consistent with the "traditional notions of fair play and substantial justice", as required by the due process clause. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Jurisdiction can be constitutionally asserted only if the nonresident defendant by some act "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 [1958] ). In determining whether a defendant has purposefully availed himself of the benefits and protections of a given state, the defendant's conduct and contacts with the forum state must be such that he could reasonably anticipate being subjected to suit there. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 474, 105 S.Ct. at 2183. The key for exercising personal jurisdiction over a nonresident defendant is the "foreseeability" of his being subjected to suit in the forum state. *World–Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Contacts with the forum state which are merely "random", "fortuitous", or "attenuated" are not sufficient to establish jurisdiction was foreseeable to the defendant. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 475, 105 S.Ct. at 2183. With these principles in mind, the Court now turns to the specific circumstances of this case.

With regard to defendant Camara, this Court concludes the due process tenet of fair play would be seriously offended by this Court's exercise in personal jurisdiction over him. *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There is no indication that defendant Camara purposefully availed himself of doing business in Wisconsin. Here, defendant Camara, as well as defendants Brittain and Louie, entered into a single contract with Mid–States, a Wisconsin corporation. Although that contract was drafted within Wisconsin, the defendants executed the contract in California. Moreover, for practical purposes, the

contract was to be effected in California through a California escrow company, which transferred the Phoenix stock to the defendants and transmitted the defendants' payment for that stock to Mid–States. *See Lakeside Bridge & Steel v. Mountain State Const.*, 597 F.2d 596, 604 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980) (holding a nonresident defendant's mere acceptance of a Wisconsin plaintiff's offer for the sale of goods, along with related exchanges of letters and telephone calls, was not sufficient to confer personal jurisdiction over the defendant in a Wisconsin court, even though the defendant knew the products at issue would be manufactured in Wisconsin). Furthermore, the submissions of the parties do not indicate the contract for the sale of Phoenix stock was initiated by the defendants. Compare *Burger King Corp. v. Rudzewicz*, 471 U.S. at 476, 105 S.Ct. at 2184; *Madison Consulting Group v. State of S.C.*, 752 F.2d 1193, 1203–04 (7th Cir.1985). Nor did defendant Camara ever enter the state for any purpose. *See Daniel J. Hartwig Associates, Inc. v. Kanner*, 913 F.2d at 1219 n. 3 (physical presence in a state is a relevant consideration in contract cases; however, it is clear that the lack of presence in the forum state is not determinative of personal jurisdiction). Finally, the fact defendant Camara was a member of the board of directors of Phoenix, a Wisconsin corporation, since June 1991 does not cause this Court to conclude his contacts with the State were anything other than "random", which do not satisfy the minimum contacts requirement. *See Burger King Corp. v. Rudzewicz*, 471 U.S. at 474–75, 105 S.Ct. at 2183–84. Notably, in that regard, despite defendant Camara's directorship of Phoenix, *all* board of directors' meetings were conducted in California.

The facts relevant to this Court's exercise of personal jurisdiction over defendants Brittain and Louie are essentially the same with one (1) exception. Relative to the management of Phoenix, defendants Brittain and Louie had telephone conversations on a nearly daily basis, as well as regular contact by means of mail and fax to Wisconsin. "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across the state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 476, 105 S.Ct. at 2184. However, this Court does not find that these additional "contacts" by defendants Brittain and Louie satisfy minimum contact requirements. Notably those contacts apparently ended in August 1991, when the contractual dispute between the parties arose, Dickert was fired as president of Phoenix, and the corporate offices were moved to California. Furthermore, the telephone, mail, and fax contacts with Wisconsin related to the business operations of Phoenix and not the contract between the parties at issue in this case.

This Court rejects Mid–State's contention that the facts of this case are analogous to those of *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), where the court ruled due process did not preclude the exercise of personal jurisdiction by California courts over a suit by a California resident against a life insurance company, where its only contacts with the forum state were the mailing of a reinsurance certificate to the state and the payment of premiums by mail from California. The *McGee* decision was based in substantial part on the unique nature of the insurance business and should be read in conjunction with the subsequent decision, in *Hanson v. Denckla*, 357 U.S. 235, 252, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), which characterized *McGee* as being a case in which the out-of-state defendant "engaged in an activity that the State treats as exceptional and subjects to special regulation." *See Lakeside Bridge & Steel v. Mountain State Const.*, 597 F.2d at 600 (distinguishing *McGee* on such grounds).

In sum, this Court concludes the defendants' contact with Wisconsin arising out of the contract at issue in this litigation, even when considered together with their other limited contacts with the state as directors of Phoenix and the routine contacts of defendants Brittain and Louie with regard to the corporate activities of Phoenix, are insuffi-

cient to satisfy the due process requirements of fair play and substantial justice.

Neither party has suggested a transfer of this case to another jurisdiction. Consequently, this Court will recommend the action be dismissed for lack of personal jurisdiction.

## PLAINTIFF'S MOTION TO AMEND ITS COMPLAINT

The plaintiff moves the Court, pursuant to Fed.R.Civ.P. 15(a), for issuance of an order allowing it leave to amend its complaint to clarify where the contract was executed and to add Phoenix as a party defendant (Amended Complaint, ¶ 16). The defendants' oppose Mid–States' motion to amend the complaint asserting that, since Mid–States seeks to add a nondiverse party defendant which would destroy diversity, analysis must proceed under Fed.R.Civ.P. 19 to determine whether Phoenix is an indispensable party. By its reply, Mid–States appears to concede that Rule 19 is relevant to its request to add Phoenix as a party but argues that, under the facts and circumstances of this case, Phoenix satisfies the requirements of that rule.

Despite the fact the parties have fully briefed Mid–States' motion to amend its complaint, this Court believes it would be inappropriate to address the matter, since it does not have personal jurisdiction over the defendants.

## CONCLUSION

**NOW THEREFORE, IT IS HEREBY RECOMMENDED** that the United States District Judge enter an order **GRANTING** the defendants' motion to dismiss.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Local Rule 13.03 (E.D.Wis.), whereby written objections to the foregoing recommendation may be filed in duplicate with the Clerk of Court within ten (10) days from the date hereof. Failure to file a timely objection shall result in a waiver to your right to appeal.