**INTERNATIONAL STEEL COMPANY, Plaintiff,**

v.

**CHARTER BUILDERS, INC., Defendant.**

**No. EV 83–208–C.**

United States District Court, S.D. Indiana, Evansville Division.

March 9, 1984.

---

**5.** The fees shall be awarded as follows:

| | | |
|---|---|---|
| Edward T. Stein | (310.40 hours x $150/hr.) | $ 46,560.00 |
| Cecile Singer | (12.50 hours x $150/hr.) | 1,875.00 |
| Mary Rita Luecke | (677.15 hours x $100/hr.) | 67,715.00 |
| Susan Kaplan | (37.05 hours x $100/hr.) | 3,705.00 |
| James Strnal | (43.55 hours x $100/hr.) | 4,355.00 |
| Linda Fisher | (63.55 hours x $75/hr.) | 4,766.25 |
| | | $128,976.25 |

David V. Miller, Evansville, Ind., for plaintiff.

Danny E. Glass, Evansville, Ind., for defendant.

## MEMORANDUM ORDER

BROOKS, District Judge.

This matter is before the Court on defendant's motion to dismiss or, in the alternative, to transfer the case to the Northern District of Texas. Jurisdiction is alleged under 28 U.S.C. § 1332, and there is diversity between these parties.

The plaintiff, International Steel Company (hereinafter "ISCO"), is incorporated under the laws of Indiana and has its principal office at Evansville, Indiana. The defendant, Charter Builders, Inc. (hereinafter "Charter"), is incorporated under the laws of Texas and has its principal office and resident agent at Dallas, Texas. It is averred by the defendant, and never has been disputed by the plaintiff, that Charter does not currently and has never maintained any office, agent, employee, telephone facility, inventory, bank account, real property or personal property in Indiana. This was conceded in the complaint and confirmed by the affidavit of J. Floyd Reedy, senior vice president for Charter.

Before turning to the procedural question raised by the motion now pending before the Court, an examination of the circumstances and facts leading to this dispute is important.

ISCO has alleged that an oral agreement was reached with Charter on June 2, 1982, with regard to the production of shop drawings for the construction of the Louisiana Bank and Trust Tower, Shreveport, Louisiana. ISCO claims it performed the requirements of that oral agreement until August 3, 1982, when it received a mailgram from Charter cancelling "all work by your firm on reference project," meaning the Louisiana Bank and Trust Tower project. The reason given in the communication was that ISCO had failed to meet its committed price on the project. ISCO seeks damages in the amount of Fifty-four Thousand, Two Hundred and Twenty-Six Dollars and Seventy-Five Cents ($54,226.75), plus attorney's fees, interest, and costs.

Apparently, discussions and negotiations preceded the June 2, 1982, oral agreement. Charter insists some of those discussions were conducted at its office in Dallas in April, 1982. There were no discussions conducted in Indiana according to the record now before the Court. Telephonic and written communications apparently were exchanged both before and after the oral agreement was consummated. These discussions and negotiations prior to the oral agreement focused on engineering and construction techniques, along with talks on price quotations on the project.

During the two-month period between June and August, ISCO claims it undertook substantial work and services toward fulfilling the oral agreement. Letters were received by ISCO on June 2, and June 7 authorizing the preparation of the shop drawings. The work originally was to be performed by one of ISCO's sub-contractors, identified in the affidavits as Schreiber & McGee. However, ISCO learned on June 21 that Schreiber & McGee could not meet the schedule required by Charter, so another sub-contractor was selected to do work related to the oral agreement, United Detailers, Inc. (hereinafter "United Detailers") located at Evansville, Indiana. Thereafter and until August 4, ISCO worked with United Detailers, supervising the drawings in preparation. Work was suspended after receipt of the August 3 mailgram from Charter.

On August 26, 1982, officials at United Detailers received communication from Charter informing them that the project had been referred to a firm identified as CoMet Steel Company. Subsequent to that communication, United Detailers received another call from Steeltailers of Texas. The person calling from that firm informed United Detailers that Steeltailers would be doing the detailing work for the bank tower at Shreveport and sent United Detailers

a purchase order for work not unlike that performed in the sub-contract agreement with ISCO.

The affidavit of Jack Bradford, president of United Detailers, states that the firm did drawings on four (4) floors of the bank tower project, two (2) while under sub-contract to ISCO and two (2) while under the agreement with Steeltailers. However, United Detailers already had submitted an invoice for Thirty-Six Thousand, Five Hundred Seventy-Six Dollars ($36,576.00) which was paid by ISCO.

This lawsuit was filed August 10, 1983. The motion to dismiss or, in the alternative, to transfer the cause to the Northern District of Texas was filed September 29, 1983. A motion for an extension of time within which to respond to plaintiff's request for production, request for admissions, and interrogatories were filed January 31, 1983. An extension of time was requested until such time as this Court ruled on the pending dismissal and transfer motion. The Court granted the motion extending time and promised a prompt disposition of the other pending motions.

## I

■ To determine what constitutes sufficient contact with a state to allow a court to exercise *in personam* jurisdiction, a court must examine the facts and circumstances on a case by case basis. 2 *Moore's Federal Practice*, ¶ 4.25(5) (2d. ed. 1978); *See, Controlled Metals, Inc. v. Non-Ferrous International Corp.*, 410 F.Supp. 339 (E.D.Pa.1976); *Chemical Bank v. World Hockey Association*, 403 F.Supp. 1374 (S.D.N.Y.1975); *Columbia Metal Culvert Co., Inc. v. Kaiser Industries Corp.*, 526 F.2d 724 (3rd Cir.1975); *Conwed Corp. v. Nortene S.A.*, 404 F.Supp. 497 (D.C.Minn. 1975); *Houghton Mifflin Co. v. National Computer Systems, Inc.*, 378 F.Supp. 592 (S.D.N.Y.1974).

■ When *in personam* jurisdiction is challenged by a motion to dismiss, the burden is on the plaintiff to show the court a basis for the assertion of the state's long-arm statute. *KVOS, Inc. v. Associated*

*Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 200, 81 L.Ed. 183 (1936); 2 *Moore's Federal Practice* ¶ 4.41–1(3), at 4–471 (2d. ed. 1978). In examining the facts and circumstances of the case the Court notes that when a motion to dismiss is supported by affidavit, the nonmoving party may not rest upon allegations in his pleadings but must set forth specific facts showing that the Court has jurisdiction. *Oddi v. Mariner-Denver, Inc.*, 461 F.Supp. 306 (S.D.Ind.1978); *see also, Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784 (9th Cir.1977); *Weller v. Cromwell Oil Co., Inc.*, 504 F.2d 927, 929–30 (6th Cir.1974). The nonmoving party's burden is met by a prima facie showing that jurisdiction is conferred by the state long-arm statute. *United States v. Montreal Trust Co.*, 358 F.2d 239 (2d Cir.1966). For the purpose of the Court making a decision on the motion to dismiss and the nonmoving party's prima facie showing of jurisdiction, any affidavits or other specific evidence of the nonmoving party must be assumed to be true. *O'Hare International Bank v. Hampton*, 437 F.2d 1173 (7th Cir.1971).

## II

■ A federal court has jurisdiction over a diversity case only if a court of the state in which the federal court is sitting would have jurisdiction. Rules 4(e) and 4(d)(7), Federal Rules of Civil Procedure; *see*, 2 *Moore's Federal Practice*, ¶¶ 4.41–1(1) and 4.32(2) (2d. ed. 1978); *Lakeside Bridge & Steel v. Mountain State Construction*, 597 F.2d 596 (7th Cir.1979). Therefore, the Court must make inquiry whether this lawsuit would be within the jurisdiction of an Indiana court.

■ First, however, one point raised by the defendant in its motion must be considered. Defendant alleges the plaintiff failed to set out in its complaint any factual ground or allegation supporting the exercise of this Court's jurisdiction over the defendant and asks dismissal for this reason. An examination of the complaint in this case reveals the requirements of notice

pleading were met as required by Rule 8, Federal Rules of Civil Procedure. Rule 8(a)(1) states that a pleading shall contain "a short and plain statement of the grounds upon which the Court's jurisdiction depends." The Court agrees with plaintiff's argument that pleadings are judged by their substance rather than form. It is plain to this Court that defendant was on notice of the complaint. To belabor this preliminary and rather minor point would be to detract from the more crucial issues explored below.

The Court presumes the assertion of personal jurisdiction derives from the Indiana long-arm statute, Trial Rule 4.4. And, the presumption further extends that jurisdiction is asserted here because the defendant, Charter Builders, was "doing business" in Indiana, a ground for personal jurisdiction:

> Any person or organization that is a non-resident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:
> (1) doing any business in this state; ...

Trial Rule 4.4(A)(1).

The test for personal jurisdiction, first enunciated in *International Shoe Company v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), has enjoyed a rich and controversial history. In *International Shoe* the Supreme Court required "minimum contacts" to exist with the forum state before personal jurisdiction could be asserted. The contacts must be of such quality that the suit does not offend what the court has called "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Court has placed great weight on whether the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its

laws." *International Shoe*, 326 U.S. at 319, 66 S.Ct. at 159; *see also, Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Mere unilateral activity of one who claims some relationship with a non-resident defendant will not subject the non-resident to the jurisdiction of a distant forum. *Id.* Whether "minimum contacts" exist in a particular factual setting must be determined on a case-by-case basis, and there are no hard and fast rules regarding the existence of a "minimum contact." *Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

As noted, *supra*, jurisdiction in this Court in a diversity case is dependent on an interpretation of Indiana case law. We now examine the Indiana approach to "minimum contacts" and its longarm statute.[1]

Indiana clearly has embraced the holdings and direction of *International Shoe* and its progeny. See, *e.g.*, *Suyemasa v. Myers*, 420 N.E.2d 1334 (Ind.App.1981). Further, Indiana recognizes as settled law that the due process clause of the fourteenth amendment limits the power of a state court to render a valid personal judgment against a non-resident defendant, the holding of *World-Wide Volkswagen.* *Id.* See also, *NuWay Systems of Indianapolis, Inc. v. Belmont Marketing, Inc.*, 635 F.2d 617 (7th Cir.1980). The Court of Appeals has held that Indiana courts need not perform a two-point analysis of whether Trial Rule 4.4 allows the exercise of jurisdiction and whether that allowance is consistent with due process. Instead, it has held that Indiana courts need only engage in a single search for the outer limits of what due process permits. *Griese-Traylor Corp. v. Lemmons*, 424 N.E.2d 173 (Ind. App.1981), citing *Oddi v. Mariner-Denver, Inc.*, 461 F.Supp. 306, 308 (N.D.Ind.1978).

To determine whether "minimum contacts" exist, the Court's inquiry focuses on the quantity, quality, and nature of the defendant's activities, together with the re-

---

**1.** For an analysis of the development in this area of the law in Indiana, see Judge Robert Neal's opinion in *Griese-Traylor Corp. v. Lemmons*, 424 N.E.2d 173, 176–180 (Ind.App.1981).

lationship of those activities and the forum state. *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *Kulko, supra,* requires focus on the defendant's activities within the forum state, not on those of the plaintiff. The Court of Appeals of Indiana, Second District, has outlined the following factors for the Court's consideration:

> The factors to be considered in determining whether fair play and substantial justice standards have been met may be summarized as follows: (1) The nature and quality of the contacts with the forum state; (2) the quantity of contacts with the state; (3) the relationship between those contacts and the cause of action; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. See *Aftanase v. Economy Baler Co.* (8th Cir.1965) 343 F.2d 187, 197. The first three are the primary factors in determining whether *International Shoe* standards are met. *Id.*

*Tietloff v. Lift-A-Loft Corp.,* 441 N.E.2d 986, 989 (Ind.App.1982). That court further stated, "A mechanical or quantitative evaluation of a defendant's activities in a state cannot resolve the question or reasonableness of the exercise of personal jurisdiction." *Id.* Similar factors were repeated in the recent case of *Woodmar Coin Center, Inc. v. Owen,* 447 N.E.2d 618, 621 (Ind.App.1983).

Without belaboring the factual summaries of each relevant case, the Court would note that in *Suyemasa, Griese-Traylor,* and *Tietloff* there are fact situations involving some kind of actual presence in the state. In *Tietloff,* the defendant transported a piece of equipment to Indiana; in *Griese-Traylor,* part of the negotiations leading to a business purchase agreement were conducted in Indiana; in *Suyemasa,* talks concerning the sale of stock occurred in Indiana and the defendant had actually solicited the sale while in Indiana. While the Court admits these summaries are far too simplified, they are noted here only to contrast with the recent *Woodmar Coin* decision, which apparently is a dramatic

step away from the other cases and finds personal jurisdiction may exist absent any actual presence within the state.

The Woodmar Coin Center, located in Lake County, Indiana, placed an advertisement in the Wall Street Journal for the sale of silver coins. Owen, a resident of Texas, made a telephone inquiry about the coins and negotiations occurred over the telephone. Based on representations made by Owens, Woodmar sent the coins to Owen for inspection. He rejected the coins and Woodmar filed suit in Lake County. The Indiana Court of Appeals ruled that personal jurisdiction over Owen existed despite the fact he never personally entered the state. His only contact was by initiating the telephone negotiations. Still, the court ruled that he had "purposely availed himself of the benefits and responsibilities of doing business in this State by soliciting, negotiating and forming a contract with an Indiana resident." *Woodmar Coin Center,* 447 N.E.2d at 621. In making an analysis of factors outlined in *Tietloff,* the court was persuaded three factors were present in *Woodmar Coin* to justify the existence of personal jurisdiction: (1) Owen's two phone calls to (the plaintiff) which initiated the relationship, (2) the substantial negotiations conducted between the parties, and (3) the contract to purchase entered into by the parties. *Id.*

### III

An analysis of the Seventh Circuit approach to problems like that presented in this motion also is appropriate. The leading case is *Lakeside Bridge & Steel v. Mountain State Construction,* 597 F.2d 596 (7th Cir.1979).

Lakeside Bridge, a Wisconsin corporation, was contracted by Mountain State, a West Virginia corporation, to furnish structural assemblies for use in constructing a dam and reservoir in Virginia. Lakeside Bridge agents visited the Mountain State office to solicit the business prior to making the contract. In fact, they left a proposal for Mountain State to consider. Sub-

sequently, Mountain State accepted the proposal and mailed a purchase order to Lakeside Bridge. Modifications were made in writing and by telephone calls. No provisions existed requiring the manufacture of the goods in any particular state; shipment was specifically covered by the contract. The dispute arose when Mountain State claimed the goods were defective in certain respects and withheld payment. Lakeside Bridge filed a lawsuit in Wisconsin state court to recover the unpaid balance. The suit was removed to federal court. The district court denied a motion to dismiss based on lack of personal jurisdiction. The Seventh Circuit considered the parties' arguments as to jurisdiction and ruled only on that issue.

After reciting the history of case law and personal jurisdiction, the Court examined the factual setting of the case. There were no personal contacts in the state of Wisconsin by agents of Mountain State. As the court noted, "The principal contact relied upon here as a basis for jurisdiction is performance of contractual obligations by the plaintiff, not the defendant, in the forum state." *Id.* at 601. The Court further noted the split of authority in the Circuits, but also stated that the Seventh Circuit had determined that the plaintiff's activities in meeting the contract, standing alone, would not confer jurisdiction over an out-of-state defendant when the contract did not require the plaintiff to perform obligations in the forum state. *Orton v. Woods Oil & Gas Co.*, 249 F.2d 198 (7th Cir.1957). The Court next undertook an analysis of *Restatement (Second) of Conflict of Laws* § 50 (1971) which states:

> A state has power to exercise judicial jurisdiction over a foreign corporation which causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effect unless the nature of these effects and of the corporation's relationship to the state makes the exercise of such jurisdiction unreasonable.

Further analyzing the Comment accompanying the section quoted above, the Court added, "[W]hen the defendant has other substantial contacts with the forum state in addition to the transaction in issue, an exercise of jurisdiction is more reasonable than it would be in their absence." *Lakeside Bridge*, 597 F.2d at 602. There were no such "other substantial contacts" in the fact setting considered. Thus the Court concluded,

> Viewed realistically, the contacts with Wisconsin in this case consist solely of '[t]he unilateral activity of (one) who claim(s) some relationship with a nonresident defendant,' and this cannot satisfy the requirement of contact with the forum state. *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. at 1240. Although Mountain State in a sense caused the activity in Wisconsin by placing the order, the contract between the parties left Lakeside in absolute control over where it would conduct that activity, and it made this decision and conducted the activity unilaterally. (footnote omitted). Mountain State's belief ... that Lakeside would choose to perform its obligations in Wisconsin does not constitute an invocation of the benefits and protections of Wisconsin's laws; Mountain State did not 'purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of tis laws.' (cite omitted). Therefore the courts of Wisconsin no more had jurisdiction over Mountain State than would the courts of England or Taiwan if Lakeside had chosen to have the goods manufactured in either of those places.

*Id.* at 603.

The Seventh Circuit, given that factual setting, provides an analysis that rejects personal jurisdiction in a situation not unlike that present in the instant case. The aftermath of *Lakeside Bridge* has produced no change in that analysis. There are instances in which personal jurisdiction has been supported by distinguishing the individual fact situations from *Lakeside Bridge*, but the basic approach and standard has not been altered.

In both *Wisconsin Electrical Manufacturing Co., Inc. v. Pennant Products, Inc.*, 619 F.2d 676 (7th Cir.1980), and *Neiman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189 (7th Cir.1980), the court ruled personal jurisdiction existed despite the holding of *Lakeside Bridge.* In the former, the court viewed as significant contacts with the forum state by an agent of the defendant. In the latter, meetings and preliminary negotiations occurred within the forum state—again, enough to distinguish the facts from *Lakeside Bridge.*

The district courts also have used the holding announced in *Lakeside Bridge* as determinative of motions similar to the one in the instant case. In two recent instances, *Lakeside Bridge* has compelled granting a motion to dismiss. The mailing of a purchase contract to the forum state (and other formalities of contract execution achieved via the mail) and telephone calls to the forum state regarding the contract to be performed in another state was not enough to confer personal jurisdiction on the federal district court. *U.S. Reduction Co. v. Amalgamet, Inc.*, 545 F.Supp. 401, 403 (N.D.Ill.1982). Similarly, a district court held no personal jurisdiction existed where the transactions in question by an Illinois plaintiff and a British West Indies resident defendant took place by telex and telephone calls.

> Such an exchange of phone calls is not enough to support jurisdiction, especially when the calls were made pursuant to a contract initially sought in defendant's state. 'To label these telephone calls and letters ... significant contacts with Illinois would be to destroy the distinction between the transaction of business in Illinois and the transaction of business with an Illinois corporation. Only the former constitutes grounds for exercising *in personam* jurisdiction over a foreign defendant, but only the latter is involved here.' *Wessel Co., Inc. v. Yoffee & Beitman Management*, 457 F.Supp. 939, 941 (N.D.Ill.1978). Indeed, were the mere use of interstate telephone systems sufficient to support jurisdiction, any state into which a phone call

was directed would be capable of asserting personal jurisdiction over the caller. (citing *Lakeside Bridge* )

*Caicos Petroleum Service Corp. v. Hunsaker*, 551 F.Supp. 152 (N.D.Ill.1982).

*Lakeside Bridge* also has been cited in cases where motions to dismiss were denied. Taking *Lakeside Bridge* and *Pennant Products* as holdings divergent on the facts only, and comparing the factual situations to the case at bar, Judge Kanne concluded a motion to dismiss presented a case more like *Pennant Products*, and thus denied the motion. *Ogden Engineering Corp. v. St. Louis Ship*, 568 F.Supp. 49 (N.D.Ind.1983). The language always focuses on the actual physical presence of the defendant or his agents in the forum state. "The defendant, by contract, purposefully availed itself of Illinois benefits and protections by initiating the contract negotiations and by sending one of its employees to Illinois to oversee and inspect the design and production of the ordered components." *Welles Product Corp. v. Plad Equipment Co., Ltd.*, 563 F.Supp. 446, 450 (N.D.Ill.1983). Such acts, along with other facts determined by that court, "demonstrate that there was more than the 'unilateral activity' of a plaintiff in the forum state." *Id.* Another fact setting was summarized, "By sending its representative into the state on two occasions for the express purpose of conducting extensive negotiations, during which an unbinding agreement was reached, and by sending numerous other communications into the state, (the defendant) has purposefully availed itself of the privilege of conducting activities within the state...." *Hyatt International v. Inversiones Los Jabillos, C.A.*, 558 F.Supp. 932 (N.D.Ill.1982). See also, *NTN Bearing Corp. v. Charles E. Scott, Inc.*, 557 F.Supp. 1273, 1275–77 (N.D.Ill.1983). In *W & W Farms v. Chartered Systems Corp. of New York, Ltd.*, 542 F.Supp. 56 (N.D.Ind.1982), the court found that a number of unsolicited telephone calls had been made to the plaintiff in the forum state, as well as the mailing of letters and brochures, also unsolicited.

That, together with other factors, satisfied the minimum contacts requirement and due process of law.

### IV

██ In a sense, the foregoing is merely prologue. The resolution of the motion here considered requires another fact-sensitive analysis, an approach performed repeatedly by the federal district courts in this circuit. It is worth noting that the appellate court has painted no bright lines for the Court's consideration. Even Supreme Court justices realize that we are dealing in a murky area of the law where conflict among the circuits is apparent. See Justice White's dissent from denial of certiorari, *Chelsea House Publishers v. Nicholstone Book Bindery, Inc.*, 455 U.S. 994, 102 S.Ct. 1623, 71 L.Ed.2d 856 (1982). In fact, Justice White also dissented from the denial of certiorari in *Lakeside Bridge*. "[T]he question of personal jurisdiction over a nonresident corporate defendant based on contractual dealings with a resident plaintiff has deeply divided the federal and state courts." *Id.*, 445 U.S. 907, 909, 100 S.Ct. 1087, 1089, 63 L.Ed.2d 325 (1980).

The task here is to reconcile *Lakeside Bridge* and *Woodmar Coin*, hardly an enviable task. In *Lakeside Bridge* we are instructed to examine the facts of the case. In summary, in the matter at hand we have no evidence which party initiated the contact. Talks apparently began at Dallas in April 1982. An oral agreement was reached by June. Work continued in Indiana until cancellation of the agreement in August. Telephone calls and letters were forwarded to Indiana from Charter Builders in Texas. Yet, Charter maintains no office or agent in this state, has never done business here, and, on the record before this Court, *never made or initiated any contact within these borders.* Taking the approach adopted by Judge Kanne in *Ogden Engineering,* when comparing this fact situation with both *Lakeside Bridge* and *Pennant Products,* this case is more like the former.

The obstacle presented is the *Woodmar Coin* decision which held that actual presence in the state was not necessarily required in order to find personal jurisdiction. The three factors Indiana courts have held are important involve the quantity, quality and nature of contacts with this state. At least in *Woodmar Coin* there is evidence that the defendant commenced the business relationship between the parties. Owen made the telephone calls and the offer to purchase. Woodmar Coin Center was apparently a passive party. Its interest was expressed in a national advertisement; the process leading to a contract with this particular defendant might have commenced because of the advertisement but it was consummated by the affirmative act of the defendant.

Despite Indiana's expressed inclination toward an expansive view of the longarm statute, *e.g., Griese-Traylor, supra,* finding *in personam* jurisdiction in the instant fact setting would be too expansive. The Court cannot find that Charter purposefully availed itself of the benefits and protections of Indiana law; nor that the interests of substantial justice and fair play are met by finding such jurisdiction; and the Court further believes a finding of *in personam* jurisdiction stretches the principles of due process beyond reason. Undoubtedly we deal with an elastic notion when we consider personal jurisdiction. But the cases imply that there is a point beyond which this jurisdiction will not stretch. Therefore, the Court cannot find that Charter Builders should have expected nor should be called to answer a complaint in Indiana. The proper forum, given this fact setting, is Texas.

Consequently, the Court hereby finds there is no personal jurisdiction with respect to Charter and GRANTS the motion to transfer this cause of action to the Northern District of Texas.

IT IS SO ORDERED.