**RELIABLE TOOL & MACHINE COMPANY, INC., Plaintiff,**

v.

**U–HAUL INTERNATIONAL, INC., Defendant.**

No. 1:93–CV–106.

United States District Court, N.D. Indiana, Fort Wayne Division.

Nov. 10, 1993.

Leonard Eilbacher, Kathleen A. Kilar, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, for Reliable Tool & Machine Co., Inc., plaintiff.

Jeffrey L. Gage, Columbia City, IN, Richard M. Amoroso, Phoenix, AZ, for U–Haul Intern., Inc., defendant.

WILLIAM C. LEE, District Judge.

### ORDER

This matter is before the court on defendant's Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(2) for lack of personal jurisdiction, and defendant's Motion to Transfer Venue in the Alternative. For the following reasons the motions are DENIED.

### Procedural Background

On January 28, 1993, U–Haul International, Inc. (hereinafter: UHI) filed a Complaint against Reliable Tool & Machine Company, Inc. (hereinafter: Reliable) in the Superior Court of Arizona, Maricopa County, seeking damages arising out of Reliable's negligence and failure to perform certain obligations pursuant to the U–Haul/Vender agreement executed by the parties. Reliable was served with the Summons and Complaint of the Arizona State Court Action on April 28, 1993. In the interim, and without apparent knowledge of the Arizona Action, Reliable filed the Complaint in the present action against UHI on April 21, 1993. The present action states a claim against UHI for the failure to make payments on its accounts arising out of the U–Haul/Vender agreement. The two actions arise out of the same agreement and the same set of facts.

On May 13, 1993, in the present action, UHI filed its Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(2), or in the Alternative to Stay. Shortly thereafter, on May 16, 1993, Reliable removed the Arizona Action from the Arizona State Court to the United States District Court for the District of Arizona.

In an Order dated June 15, 1993, this court granted UHI's Motion to Stay in the Alternative. Specifically this court held "[T]he court will grant UHI's motion to stay pending a ruling by the Arizona District Court on Reliable's Motion to Transfer. If the Motion to Transfer is granted, the cases will be consolidated in this court." UHI also filed a Reply Brief in Support of Motion to Dismiss and Brief in Support of Alternative Motion to Transfer on June 29, 1993.

The United States District Court for the District of Arizona granted Reliable's Motion to Transfer on September 9, 1993. United States Magistrate Judge Roger B. Cosbey of the Northern District of Indiana lifted the stay in the present action on October 21, 1993. Therefore, the issue of whether this court has personal jurisdiction over UHI is now ripe for decision as is UHI's Motion to Transfer the case to the United States District Court for the District of Arizona. All of the issues have been fully briefed.

### Factual Background

UHI is a Nevada corporation with its principal place of business in Phoenix, Arizona. UHI is in the business of renting and selling equipment to the general public for do-it-yourself moving. UHI does not now have nor has it ever had any office or place of business in Indiana. Reliable is an Indiana corporation with its principal place of business in Kendallville, Indiana. Reliable operates a machine shop with approximately one hundred (100) employees. Reliable does not now nor has it ever had any office or place of business in Arizona.

Sometime in the fall of 1991, UHI and Reliable entered into negotiations to have Reliable manufacture replacement hub and

axle assemblies for UHI. These negotiations occurred by phone, facsimile and the mails. Sometime during the contract negotiations, Reliable sent two representatives to Arizona in order to facilitate the negotiation process. Concurrent with these negotiations, UHI began sending to Reliable samples, component parts, drawings, prints and instructions detailing the desired product. After various modifications were made as requested by UHI and prototypes reflecting the changes were accepted by UHI, UHI and Reliable entered into a standard, unilaterally drafted U–Haul/Vendor agreement dated March 25, 1992.[1] The agreement drafted by UHI does not specify which state's law is to govern the agreement.

UHI then authorized Reliable to begin the tooling necessary to manufacture the hub and axle assemblies in April and May of 1992. Initially, UHI ordered 7,500 hub assemblies and 7,500 axle assembles. However, Reliable received additional orders from UHI bringing the totals to approximately 15,000 axle assemblies and approximately 30,0000 hub assemblies.

During the course of performance of the agreement, certain problems arose with respect to the products delivered by Reliable. These problems manifested themselves in the months of August, September and November of 1992. U–Haul sent representatives to Reliable in September and December in order to resolve the problems amicably, but were unsuccessful.

Although UHI has made partial payment toward the invoices of Reliable, since January 1993, UHI has been unresponsive to Reliable's demands for payment. There remains an outstanding balance of $905,793.84. UHI asserts that it assumed the responsibility of curing the alleged defects in the assemblies and to date the cost to do so has reached $500,000.00. UHI expects the total cost of repairing all of the allegedly defective parts to exceed one million dollars.

*Personal Jurisdiction*

■ Due process requires that a trial court acquire personal jurisdiction over a non-resident defendant before it can render a valid judgment against the defendant. *Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). The due process requirements are that the defendant be given adequate notice of the pending suit, *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and that the defendant be subject to the personal jurisdiction of the court, *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ Before a court can exercise personal jurisdiction over a non-resident defendant, it must determine that "minimum contacts" exist between the forum state and the non-resident defendant which comport with due process. *Asahi Metal Ind. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 107, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987). The test is essentially a determination by the forum court as to whether it is reasonable, due to the non-resident defendant's conduct in connection with the forum state, for the non-resident defendant to anticipate being haled into court in the forum state. *World Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1985). A further inquiry is whether the non-resident defendant purposefully availed himself or itself of the privilege of conducting activities within the forum state. *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 473, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528. In order to determine whether minimum contacts exist, the court must focus on the quantity, quality, and nature of the defendant's activities, together with the relationship of those activities and the forum state. *International Steel Co. v. Charter Builders, Inc.*, 585 F.Supp. 816, 820–21, (S.D.Ind.1984), citing, *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). The test for minimum contacts is flexible and necessarily dependent upon the facts of each case with particular attention to the nature and quality of the

---

1. Although the agreement is dated March 25, 1992, it appears that the agreement was not fully executed until it was signed by Reliable, received

by U–Haul in Arizona and signed by an appropriate representative of U–Haul's Technical Center, all of which occurred on or about July 31, 1992.

contacts. *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980); *W & W Farms, Inc. v. Chartered Systems Corp.*, 542 F.Supp. 56 (N.D.Ill.1982).

For this court to decide that it has personal jurisdiction over a non-resident defendant, the court must be shown "those affiliating circumstances that are a necessary predicate to any exercise of state court jurisdiction." *World Wide Volkswagen*, 444 U.S. at 294, 100 S.Ct. at 566. "Unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state." *Hanson v. Denckla*, 357 U.S. 235, 251–54, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958).

Once the court has determined that minimum contacts exist, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985), *quoting Milliken v. Meyer*, 311 U.S. 457, 461, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). In *Burger King*, the Supreme Court outlined the factors that are to be considered when determining whether the exercise of personal jurisdiction comports with fair play and substantial justice: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering substantive social policies. *Id.* at 462, 105 S.Ct. at 2184.

■ Where a federal court asserts jurisdiction pursuant to the Diversity Statute, 28 U.S.C. § 1332, the court acquires personal jurisdiction over a non-resident defendant in accordance with the long-arm statute of the state in which it sits. *Scott Turnock v. Cope*, 816 F.2d 332, 334 (7th Cir.1987); *Lakeside Bridge & Steel Co., Inc., v. Mountain Side Construction Co., Inc.*, 597 F.2d 596 (7th Cir.1979); *Casad Ry. Services, Inc. v. Union Pacific R. Co.*, 659 F.Supp. 123 (N.D.Ind.

1987). In Indiana, the long-arm statute is set forth in Trial Rule 4.4(A), and it provides in pertinent part:

**(A) Acts serving as a basis for jurisdiction.** Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state;

(4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state;

\* \* \* \* \* \*

Indiana Code, Title 34 App., Trial Rule 4.4.

■ Trial Rule 4.4(A) is applicable to federal courts located in Indiana where the federal courts are sitting in diversity. Fed. R.Civ.P. 4(e), 4(d)(7). Trial Rule 4.4(A) is intended to extend Indiana *in personam* jurisdiction to the extent allowed by due process. *Nu–Way Systems v. Belmont Marketing*, 635 F.2d 617 (7th Cir.1980); *Chulchian v. Franklin*, 392 F.Supp. 203 (S.D.Ind.1975), *aff'd*, 532 F.2d 757 (7th Cir.1976); *Valdez v. Ford, Bacon & Davis, Texas, Inc.*, 62 F.R.D. 7 (N.D.Ind.1974). Furthermore, it has been held that Indiana courts need only engage in a single search for the outer limits of what due process permits. *Griese–Traylor Corp. v. Lemmons*, 424 N.E.2d 173 (Ind.App.1981), citing, *Oddi v. Mariner–Denver, Inc.*, 461 F.Supp. 306, 308 (N.D.Ind.1978).

■ When the issue of personal jurisdiction is raised via a motion to dismiss, the burden of proof rests upon the party asserting jurisdiction. *Wessel Co., Inc. v. Yoffee & Beitman Mgmt. Corp.*, 457 F.Supp. 939, 940 (N.D.Ill.1978). This burden of proof is met by a prima facie showing that jurisdiction is conferred by the long-arm statute. *Neiman v. Rudolph Wolff & Co., Ltd.*, 619 F.2d 1189, 1190 (7th Cir.1980); *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir.1971); *Wessel Co., Inc.*, 457 F.Supp. at 940. In considering a challenge to personal jurisdiction, a court may receive and weigh

affidavits, but must construe all facts concerning jurisdiction in favor of the non-movant, including disputed or contested facts. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1215 (7th Cir.1984); *Neiman,* 619 F.2d at 1190; *United States Railway Equipment Co. v. Port Huron & Detroit Railroad Co.,* 495 F.2d 1127, 1128 (7th Cir. 1974); *O'Hare International Bank,* 437 F.2d at 1176; *Maurice Sternberg, Inc. v. James,* 577 F.Supp. 882, 885 (N.D.Ill.1984).

In determining whether minimum contacts exist in the instant case, the court reiterates that the test is necessarily fact specific and that there is no rote, mechanical test to be applied. Rather the court must consider all of the facts and circumstances of the individual case. *Replas, Inc. v. Wall,* 516 F.Supp. 59 (S.D.Ind.1980). The court finds that UHI has sufficient contacts with the State of Indiana for this court to exercise personal jurisdiction over it. The court bases this finding on a number of factors, when viewed as a whole, prove UHI purposefully availed itself of this forum.

The most important factor that demonstrates UHI purposefully availed itself of this forum is that UHI sent its representatives into the State of Indiana on two separate occasions to insure the performance of the contract which forms the basis of this litigation. UHI sent three of its representatives to Reliable's shop in Kendallville, Indiana, in September 1992, to inspect and discuss the manufacturing process in order to ascertain why UHI was discovering alleged defects in the hub and axle assemblies. Also, in December 1992, UHI sent two of its representatives to Reliable's shop to examine the facilities to find out why contaminates were showing up in the assemblies when they arrived at UHI's technical facilities in Arizona.

The presence of UHI's representatives in the forum state is a substantial contact that shows UHI purposefully availed itself of the forum state, and therefore, is subject to the personal jurisdiction of the forum state. *Ogden Engineering Corp. v. St. Louis Ship,* 568 F.Supp. 49, 54 (N.D.Ind.1983). In *Ogden,* the non-resident defendant sent its representatives to Ogden, Indiana, to inspect Ogden Engineering's facilities to ascertain whether it could meet defendant's special requirements. This trip was proceeded and followed by numerous telephone calls and correspondence that were all related to the contract executed by both parties in which Ogden Engineering was to supply defendant with over one million dollars worth of specialized welding equipment. The dispute arose when defendant withheld partial payment of the purchase price because of an alleged defect it discovered in the welding equipment. Ogden Engineering filed suit in federal court in Indiana to recover the unpaid balance. Defendant filed a motion to dismiss for lack of personal jurisdiction.

The court held that defendant had purposefully availed itself of the forum state. The most important factor in reaching this conclusion was that defendant had sent its representatives into Indiana during the contract negotiations. *Id.* at 54. The court held that this important factor distinguished *Ogden* from the leading case of *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.,* 597 F.2d 596 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), and more closely resembled *Wisconsin Electric Manufacturing Co., Inc. v. Pennant Products, Inc.,* 619 F.2d 676 (7th Cir.1980). Both cases dealt with contractual obligations and personal jurisdiction between corporations. A brief description of *Lakeside* and *Wisconsin Electric* is in order.

In *Lakeside,* plaintiff was a Wisconsin corporation who entered into a contract to build outlet works for a dam for which defendant, who was a West Virginia corporation, was the primary contractor. Plaintiff initiated the dialogue between the two parties and sent its representatives to West Virginia to submit its bid and proposal. After defendant obtained the primary contract for the dam project, it accepted plaintiff's proposal by mailing a purchase order to plaintiff. The parties routinely contacted each other by telephone and through the mails while plaintiff worked to complete the order in Wisconsin. The court noted defendant had not solicited plaintiff's bid nor sent its own representatives to Wisconsin at any time. Furthermore, plaintiff's finished product was shipped directly to the work site in Virginia

and not to defendant's principal place of business in West Virginia.

The Seventh Circuit Court of Appeals held that the contacts were not such so as to satisfy the due process requirements and confer personal jurisdiction over the defendant. The court concluded that the use of interstate telephone and mail service were insufficient contacts to confer jurisdiction in Wisconsin, and to do so would amount to giving jurisdiction to any state into which communications were directed. *Lakeside,* 597 F.2d at 604. The court further stated, "Viewed realistically, the contacts with Wisconsin in this case consist solely of '[t]he unilateral activity of [one] who claim[s] some relationship with a nonresident defendant,' and this 'cannot satisfy the requirement of contact with the forum state.'" *Lakeside* at 603, citing, *Hanson v. Denckla,* 357 U.S. 235, 254, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). This ruling is in accord with *International Steel Co. v. Charter Builders,* 585 F.Supp. 816 (1984), where that court noted the focus is on defendant's activities in the forum state and not plaintiff's. *Id.* at 821, citing, *Kulko v. California Supreme Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

Approximately one year after handing down *Lakeside,* the Seventh Circuit decided *Wisconsin Electric, supra.* In *Wisconsin Electric,* plaintiff, a Wisconsin corporation, manufactured computerized control systems for industry, and defendant, a New York corporation, was in the bakery business. Plaintiff was a subcontractor on a project defendant had set up with an Ohio corporation, and because of the complexities involved, plaintiff and defendant communicated with each other directly. There was a series of telephone calls and visits to plaintiff's facilities in Wisconsin that resulted in a purchase order by defendant. Plaintiff accepted the purchase order by sending notification of such through the mail. However, plaintiff fell behind schedule and a dispute arose that lead to litigation. The Seventh Circuit held personal jurisdiction was proper:

> The significant contacts of the out-of-state buyer with the forum state that are present here but absent in *Lakeside* are visits by the buyers' agents to Wisconsin in connection with the business on which the claim is based ... The two visits by agents of the defendant to Wisconsin are enough, in our opinion, to distinguish this case from *Lakeside* ... Satisfied here is the requirement that the defendant, not merely the plaintiff, conduct activities in the forum state, which in a contract case must relate to the formation or performance of the contract. The visits by [defendants's] agents to be [sic] the forum state, first during negotiations to determine, by inspecting [plaintiff's] facilities there, whether it would be able to perform the contract, and later, while the contract was being performed, to negotiate with [plaintiff] about performance, were not merely matters of convenience, ... but rather were significant in the formation of the contract and [defendant's] efforts to have it satisfactorily performed [footnotes and citations omitted].

*Wisconsin Electric,* 619 F.2d at 677–78.

After noting that the facts in *Ogden* more closely resembled the facts in *Wisconsin Electric,* the district court in *Ogden* determined that personal jurisdiction was proper because defendant in *Ogden* had not only visited the forum state, but also had other significant contacts with Indiana as well. *Ogden,* 568 F.Supp. at 56.

This court is of the opinion that the case at bar is more closely related to *Wisconsin Electric* and *Ogden* than *Lakeside.* In the present action, not only were extensive contract negotiations undertaken between both parties via telephone, facsimile, and the mails, but UHI also sent its representatives to Reliable's tool shop in order to make sure that Reliable would perform under the contract. The court finds unpersuasive defendant's distinction between visits made to a forum state prior to contract formation and visits made after contract formation. The Seventh Circuit made no such distinction in *Wisconsin Electric,* but instead held that visits made during the course of performance could also be significant contacts with the forum state. *Wisconsin Electric,* 619 F.2d at 678. This court deems controlling the fact that UHI thought the contract was important

enough to make substantial contacts with the forum state, not when the visit was made. *Id.* at 678 n. 7 & 10.

The court also finds other contacts defendant made with the State of Indiana to be significant, and therefore, the exercise of personal jurisdiction over defendant is proper. During contract negotiations, defendant caused several shipments of parts and materials to be shipped to Reliable in Kendallville, Indiana. In December 1991, on at least two separate occasions, UHI caused to be delivered to Reliable sample metric studs and spindle nuts and spindle washers for use in manufacture of the assemblies. In March 1992, UHI caused certain forgings for axles to be delivered to Reliable. Also, in May 1992, UHI caused at least seven hundred fifty (750) spring pads to be shipped to Reliable. Moreover, under the terms of the contract, defendant was to take ownership of certain toolings located in Indiana once the contract had been performed and Reliable was able to recoup its cost over the production run. Although the dispute between the parties interrupted the production run and Reliable never fully recouped its cost for the tooling, the tooling was released to UHI in December 1992. The court finds these acts of shipping goods into the forum state pursuant to contract negotiations and ownership of personal property pursuant to the contract to be more than mere "unilateral activity" on the part of the plaintiff as alleged by defendant.

Defendant cites *Nu–Way Systems, Etc. v. Belmont Marketing, Inc.* 635 F.2d 617 (1980); *Lakeside Bridge & Steel Co. v. Mountain Side Construction Co.,* 597 F.2d 596 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980); *International Steel Co. v. Charter Builders, Inc.,* 585 F.Supp. 816 (S.D.Ind.1984); *Baseball Card World, Inc. v. Pannette,* 583 N.E.2d 753 (Ind.App.1991); *Rapid Picture Show v. Exclusive International Pictures, Inc.,* 482 N.E.2d 1159 (Ind.App.1985), for the proposi-

tion that it conducted no activity within the forum state especially where the two parties conducted contract negotiations by use of the telephone, facsimile, and the mails.[2] All of the cases cited *supra* do support defendant's basic contention that limited use of communication devices in interstate commerce will not automatically subject a non-resident defendant to personal jurisdiction in some other state. The courts have uniformly held that something more is required. However, the court has already found the facts of the present action distinguishable from the cases cited *supra* in that defendant did do more to purposefully avail itself of this forum than merely communicate with plaintiff via interstate communication devices.

Furthermore, it is alleged that UHI initiated the communications and contract negotiations with Reliable. If this is true, and the court must accept the truth of plaintiff's affidavit in considering the motion to dismiss, *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1215 (7th Cir.1984), UHI is not merely a passive defendant, but an active solicitor of business and this factor may also be considered by the court in determining whether personal jurisdiction exists. *Baseball Card World, Inc. v. Pannette,* 583 N.E.2d 753 (Ind.App.1991).

Finally, the court agrees with the observation made by the Supreme Court in *Burger King:*

> Moreover, where individuals "purposefully derive benefit" from their interstate activities, *Kulko v. California Superior Court,* 436 U.S. 84, 96, 98 S.Ct. 1690, 1699, 56 L.Ed.2d 132 (1978), it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. And because "modern transportation and communications have made it

2. Defendant also cites *U.S. Reduction Co. v. Amalgamet, Inc.,* 545 F.Supp. 401 (N.D.Ill.1982), and *Caicos Petroleum Service Corp. v. Hunsaker,* 551 F.Supp. 152 (N.D.Ill.1982) for the same proposition. However, these two cases involve the interpretation of Illinois' long arm statute which has been interpreted not to reach the Constitutional limits of due process where as Indiana's long arm statute has been held to do so. Therefore, these cases are not persuasive argument.

much less burdensome for a party sued to defend himself in a State where he engages in economic activity," it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), citing, *McGee v. International Life Insurance Co.,* 355 U.S. 220, 222, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

 Now that the court has determined defendant has minimum contacts with the forum state, it must ascertain whether the exercise of personal jurisdiction comports with fair play and substantial justice by analyzing the facts of the case in relation to the five factors set forth in *Burger King.* The five factors are:

"[C]ourts in appropriate case[s]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."

*Burger King,* 471 U.S. at 474, 105 S.Ct. at 2184.

Defendant has alleged that the burden will "undoubtedly be greater on UHI if it must litigate its breach of contract and tort claims in Indiana." The court is not convinced. The court takes notice of a copy of an order issued by the United States District Court for the District of Arizona transferring the Arizona Action from that court to this court. The copy was submitted as Exhibit "A" to Plaintiff's Motion to Vacate Stay Order filed September 20, 1993 in this court. In the order, the Arizona District Court states the greater burden would be sustained by Reliable if it were ordered to litigate the dispute in Arizona. The court found that the greater number of non-party witnesses resided in or near Indiana, a majority of negotiations, communications and manufacturing occurred in Indiana, significant evidence is located in Indiana, and that U–Haul is the larger and

more prosperous company better able to litigate in a foreign state.

Defendant has also failed to show that Arizona has an interest in adjudicating this matter. In fact, just the opposite has been shown. The district court in Arizona has determined that Indiana has a greater interest in adjudicating this matter by transferring the Arizona action to this court for all further proceedings.

Plaintiff's interest in obtaining convenient and effective relief and the judiciary's interest in efficient resolution of controversies are also more adequately met by having the dispute litigated in Indiana. Plaintiff is obviously well served by having the dispute litigated in its home state. Also, the goal of using limited judicial resources efficiently is best served by litigating the dispute before this court where the matter is already well along.

Finally, the court is not convinced that dismissing Reliable's claim will serve any substantive social policy. UHI has made a bare allegation that Reliable is forum shopping. However, the court is not persuaded that Reliable is engaged in any such conduct.

### Motion to Transfer

In defendant's reply brief to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, In the Alternative, to Stay, defendant asserts a new argument. Defendant asks this court to transfer the present action to the United States District Court for the District of Arizona. Defendant made this request after this court had already granted defendant's Motion to Stay pending a ruling by the Arizona District Court on Reliable's Motion to Transfer the Arizona action. On September 9, 1993, the Arizona District Court issued an order transferring the Arizona action to this court. Shortly thereafter, this court granted Reliable's Motion to Lift Stay because the Arizona District Court had issued its ruling, thereby making it appropriate for this court to consolidate the two cases and continue to trial.

 Once the Arizona action was transferred to this court, the issue of personal jurisdiction over defendant was properly

before this court. *U.S. v. Reid,* 104 F.Supp. 260 (D.C.Ark.1952).[3] However, the issue of whether this court may re-transfer the present action back to the District Court of Arizona is not properly before the court. The issue has essentially been rendered moot by the District Court of Arizona when it transferred the Arizona action to this court. "If the motion to transfer under 28 U.S.C.A. § 1404(a) is granted and the case transferred to another district, the transferee-district should accept the ruling on the transfer as the law of the case and should not re-transfer 'except under the most impelling and unusual circumstances' or if the transfer order is 'manifestly erroneous'." *United States v. Koenig,* 290 F.2d 166, 173 n. 11 (1961), *aff'd,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). The court finds no unusual circumstances or that the Arizona District Court's ruling is manifestly erroneous. Accordingly, defendant's Motion to Transfer is denied.

### Conclusion

For the foregoing reasons, the defendant's Motion to Dismiss for lack of personal jurisdiction is DENIED, and defendant's Motion to Transfer Venue is also DENIED.

---

3. The court held that a federal district court is not bound by an order of transfer from the transferor court where the transferee court lacks personal jurisdiction over the defendant. The court further held it was proper for the transferee court to make its own determination as to whether personal jurisdiction is present.